ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

SUSAN KNIGHT (CABN 209013)
JOSEPH E. SPRINGSTEEN (DCBN 474317)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    E-Mail: Susan.Knight@usdoj.gov
           Joseph.Springsteen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 17-00168 LHK |
| Plaintiff, | UNITED STATES' PRETRIAL MOTIONS IN LIMINE |
| v. | |
| ROSS COLBY, | Pretrial Conference:  May 2, 2018 |
| Defendant. | Time:  9:15 a.m. |
| | Trial:  May 29, 2018 |
| | Court:  Honorable Lucy H. Koh |

      The United States of America hereby submits its Pretrial Motions in Limine in the above-captioned case.  The United States respectfully requests the right to submit further motions pending receipt of the defendant's pretrial materials.

//

//

//

1

**Motion in Limine No. 1 - The Defense Should Be Precluded from Presenting Any Inappropriate Arguments at Trial**

### A. The Defense May Not Claim That the Defendant is Being "Unfairly Singled Out" or "Persecuted" or That Other Individuals Should Have Been Charged.

The defense may seek to claim at trial that the defendant is being unfairly singled out for prosecution or other individuals should have been charged. This defense theory of the case would be groundless, cannot be made in good faith, and has no place at the defendant's trial.

Any assertion by the defense, in argument or through testimony that other individuals associated with the intentional and attempted damage to a protected computer, unauthorized access to a protected computer, or other crimes alleged in the indictment, should have been criminally charged but that defendant has been unfairly and unreasonably singled out, would be improper.

It is well-established that the Attorney General and the United States Attorney retain broad discretion to enforce our nation's criminal laws. *Wayte v. United States*, 470 U.S. 598, 607 (1985). A simple allegation by any of the defendant that he has been singled out for prosecution, while other similar violators have not been charged, does not provide the basis for a selective prosecution claim.

To succeed on a selective prosecution claim, each defendant must show that he or she was "selected for prosecution on the basis of an impermissible ground such as race, religion, or exercise of constitutional rights." *United States v. Wilson*, 639 F.2d 500, 503 (9th Cir. 1981) (citations omitted). "The fact that not all criminals are prosecuted is no valid defense to the one prosecuted. . . . [T]he administration of such a matter lies in the discretion of the prosecuting attorney." *United States v. Choate*, 619 F.2d 21, 23 (9th Cir. 1980) (citations omitted).

Even in the rare case where a defendant can make a *prima facie* showing of selective prosecution, the proper method for seeking relief is through a motion to dismiss, not by the presentation of evidence or argument to the jury. As the Supreme Court has explained, "a selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong v. United States*, 517 U.S. 456, 462 (1996). A selective prosecution claim "is a legal question addressed to the court and not the jury." B. L. Gershman, Prosecutorial Misconduct § 4.3(e)(1), at 4-31 (1996).

Indeed, selective prosecution claims, where they lie, should be raised by pre-trial motion to dismiss. *United States v. Dion*, 762 F.2d 674, 680 (8th Cir. 1985), *rev'd on other grounds*, 476 U.S. 734 (1986) (citing *United States v. Jarrett*, 705 F.2d 198, 204 (7th Cir. 1983) (citations omitted)).  There is no basis for the defendant to believe or assert that he has been unfairly singled out for prosecution.  In any event, there is no authority supporting presentation of selective prosecution claims to a jury.

Claims that other individuals associated with the intentional and attempted damage to a protected computer, unauthorized access to a protected computer, or other crimes alleged in the indictment, should have been prosecuted has no relevance other than to support a selective prosecution claim.  Such testimony would be irrelevant and inadmissible under Federal Evidence Rules 401 and 402, or alternatively, is unduly prejudicial, highly inflammatory, misleading, and a waste of time under Federal Rule of Evidence 403.  The United States therefore respectfully requests that the Court preclude:  (1) any evidence and argument that other individuals connected to the scheme should have been prosecuted in this case; and (2) any other evidence or argument that the defendant has been "persecuted" or otherwise selectively prosecuted in this matter.

### B.   The Defense May Not Seek Jury Nullification

In addition, the United States anticipates that the defendant may seek to introduce argument or testimony that will encourage jury nullification.  For example, they may attempt to present to the jury evidence or argument on any or all of the following themes or topics:

- that defendant's conduct even if proven should not rise to the level of a criminal violation;

- any reference to punishment or the consequences may result if defendant is convicted at trial; and/or,

- excessive or repeated references to the defendant's health, or other references that are clearly an attempt to elicit jury sympathy.

Such evidence and argument are for a different forum, not for trial in this case.

The defendant is not entitled to present evidence or argument solely to promote jury nullification.  "[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.  Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant." *Zal v. Steppe*, 968 F.2d 924, 930

(9th Cir.) (Trott, J., concurring); *see also United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (rendering a verdict contrary to law and evidence by possibility of jury nullification does not authorize disregarding traditional principles concerning admissibility of evidence).

Rule 402 of the Federal Rules of Evidence prohibits the admission of irrelevant evidence.  Rule 401 of the Federal Rules of Evidence defines relevance as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence."  As the Eighth Circuit has cautioned:

> Although the definition of "relevant evidence" given in Federal Rule of Evidence 401 is broad, it does have limits. Evidence must be probative of a fact of consequence in the matter, and must have a tendency to make the existence of that fact more or less probable that it would have been without the evidence.

*United States v. Hollister*, 746 F.2d 420, 422 (8th Cir. 1984).  Whether a fact is material is determined by the substantive law that governs an action, which in a criminal case "consists of elements of the offense charged and any relevant defenses to defeat criminal liability."  *United States v. Lamberty*, 778 F.2d 59, 61 (1st Cir. 1985) (citing *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. Unit A Aug. 1981)).  Because the determination of whether intentional and attempted damage to a protected computer and unauthorized access to a protected computer should be a crime or merely a civil wrong is neither an element of the offenses nor a relevant defense, such evidence must be excluded under Rule 402.

Even if the Court decided that the topics/themes listed above had *some* relevance to this case, such testimony or argument should be excluded under Rule 403 of the Federal Rules of Evidence because their probative value would be substantially outweighed by the danger of undue delay and confusion of the issues.  In light of the above, the United States respectfully requests an order from this Court prohibiting the defendant from making any of references listed above to the jury panel/jury during the jury selection process, opening statements, examination of witnesses including the defendant if he elects to testify, and summation.

The defendant should also be prohibited from any making reference to consequences that may if he is convicted at trial.  "It has long been the law that it is inappropriate for a jury to consider or be

informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir.

1992).  As explained by the Fifth Circuit in *Pope v. United States*, 298 F.2d 507 (5th Cir. 1962):

> To inform the jury that the court may impose minimum or maximum sentence, will or will not grant probation, when a defendant will be eligible for parole, or other matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.

*Id.* at 508.

For this reason, it is the practice in the federal courts to instruct juries that they are not to be

concerned with the consequences to the defendant of the verdict, except where required by statute.

*Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished "that the jury had

no sentencing function and should reach its verdict without regard to what sentence might be imposed");

*United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (trial judge properly instructed jury that the

"punishment provided by law for the offenses charged in the indictment are matters exclusively within

the province of the court.  It should never be considered by the jury in any way in arriving at an

impartial verdict as to the guilt or innocence of the accused.").

The integrity of the jury process will be compromised if the defense makes any reference to

punishment in the jury selection process or in front of the jury prior to their reaching a verdict.  That

reference could be as overt as, "you understand the defendant is facing up to twenty years in prison if

convicted," or more subtle such as "the defendant is facing a lot of time," or "this case has serious

consequences for the defendant," or "the defendant's liberty is at stake in this trial."  Such comments

regarding punishment are inappropriate in light of clear authority that the jury is not to consider

punishment in determining whether the defendant is guilty of the charged offenses.  Once the jury hears

anything about punishment, the bell simply cannot be un-rung or the damage neutralized by a curative

instruction.  As such, the United States moves *in limine* for an order barring the defendant from making

any reference before the jury panel/jury to the issue of punishment during the jury selection process,

opening statements, examination of witnesses, including the defendant if he elects to testify, and

summation.

//

//

5

### C.      Defense Counsel May Not Vouch or Express Personal Opinions

Counsel's personal beliefs and opinions are irrelevant and improper for the jury to consider. Vouching by counsel is prohibited. Defense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case. *United States v. Young*, 470 U.S. 1, 8-9 (1984); *see also United States v. Swanson*, 943 F.2d 1070, 1078 (9th Cir. 1991) (concurring opinion) ([D]efense counsel is not to inform the jury of his or her opinion of the guilt or innocence of the defendant.). The United States therefore respectfully requests that the Court prohibit counsel from vouching or expressing personal opinions to the jury.

### Motion in Limine No. 2 - The Court Should Exclude any Evidence that the Defense was Obligated to Produce Before Trial Pursuant to Rule 16(b)

The United States has been complying with its discovery obligations pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady*. The United States has produced hundreds of pages of discovery and has continued to meet its obligation by sending out additional discovery as it became (and becomes) available. The United States will shortly be providing an exhibit and witness list to the defense nearly two months before the first day of trial.

The United States formally requested discovery from the defendant pursuant to Federal Rules of Criminal Procedure Rule 16, Rule 12.1 and Rule 26.2 in a letter dated April 27, 2017.

Despite the United States' compliance with its discovery obligations, at no time has the defendant: (1) objected to the United States' request for reciprocal discovery, or (2) as of April 9, 2018, produced any discovery pursuant to their obligations under Rule 16(b) of the Federal Rules of Criminal Procedure.

Out of an abundance of caution, the United States submits this motion to exclude any evidence offered by the defendant at trial that the defense has failed to produce prior to trial in violation of their reciprocal discovery obligations.

Rule 16(b)(1)(A) provides that once a defendant has requested disclosure under Rule 16(a)(1)(C) or (D), upon compliance with such request, the government can request and shall be allowed to inspect, copy or photograph the following:

> . . . books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody or control of the

defendant and which the defendant intends to introduce as evidence in chief at the trial.

Rule 16(b)(1)(B) provides that once a defendant has requested disclosure under Rule 16(a)(1)(C) or (D), upon compliance with such request, the government can request and shall be allowed to inspect, copy or photograph the following:

. . . any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom defendant intends to call at the trial when the results or reports relate to that witness' testimony.

As discussed above, the United States has complied with Rule 16(a)(1)(C) and (D).

Accordingly, defendants are obligated to produce any documents, photographs or other tangible objects or the results of any tests conducted by the defense that the defense intends to use in their case-in-chief.  It is well-settled that this Court may exclude evidence that a defendant failed to produce pursuant to their discovery obligations.  Fed. R. Crim. P.16(d)(2) ("the court may . . . prohibit the party from introducing evidence not disclosed"); *see also Taylor v. Illinois*, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence); *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (court's exclusion of checks that defendant failed to produce during discovery was not an abuse of discretion). This Court should exercise its discretion to order this remedy here.  Alternatively, the Court should enter an order requiring the defense to comply with its discovery obligations forthwith.  Taking either of these steps would avoid the alternative:  delays during the trial due to eleventh hour production by the defense.

Judge Ronald M. Whyte notably recognized the importance of reciprocal discovery from the defense in an order compelling such discovery in the trial of *United States v. Sineneng-Smith*, CR 10-00414 RMW:

**Scope of the reciprocal discovery obligation**

Rule 16(b)(l)(A)(ii) requires the defense to disclose items it intends to use in its "case-in-chief."  There is a lack of case law in the Ninth Circuit defining what constitutes a defendant's "case-in-chief."  However, the defense should not be permitted to circumvent its disclosure obligation by presenting exhibits during the cross-examination of government witnesses or by characterizing an exhibit as being offered for impeachment when it addresses the substance of the charges.  As noted in the Advisory

Committee's Notes to the 1974 Amendments to Rule 16(b), "[t]he majority of the Advisory Committee is of the view that the two-prosecution and defense discovery-are related and that the giving of a broader right of discovery to the defense is dependent upon giving also a broader right of discovery to the prosecution."  A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense."  Black's Law Dictionary 207 (7th ed. 1999).  In *United States v. Young*, the court affirmed the exclusion of a recorded conversation between the defendant and a government witness, offered by the defendant without prior disclosure to the government, because the evidence, though offered during cross-examination, was meant to support the defendant's case-in-chief.  248 F.3d 260, 268 (4th Cir. 2001); *see United States v. Hsia*,2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000).  The question is more *how* the evidence is *used*, as opposed to when it is first introduced, to be in line with the spirit of the reciprocal disclosure obligation.  *Young*, 248 F.3d at 268.

"The district court . . . has unquestioned discretionary power to exclude evidence that should have been produced in reciprocal discovery."  *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011).

The reciprocal disclosure obligation does not extend to documents that are used solely to impeach.  *See United States v. Medearis*, 380 F.3d 1049 (8th Cir. 2004); *United States v. Moore*, 208 F.3d 577, 579 (7th Cir. 2000).  If defendant seeks to offer an item which has not been disclosed, the court will exclude the item if its primary purpose goes to her case-in-chief even if it is purportedly offered for impeachment.  On the other hand, if the evidence is offered solely for impeachment, it will be allowed despite the fact it was not disclosed.  For guidance purposes, the court advises that documents that defendant used in her immigration services business would appear to be case-in-chief documents.

The court orders defendant to disclose any exhibits she intends to offer in support of her case-in-chief (as herein interpreted) to the government . . . or the court may exclude any such evidence offered at trial under Rule 16(d)(2).

*See* Order Re:  Government Request for Reciprocal Discovery from Defendant; (CR 139), *United States v. Sineneng-Smith* (CR 10-00414 RMW) (footnote omitted).

Here, as in *Sineneng-Smith*, this Court should order the defendant to disclose the United States forthwith any documents that the defense intends to offer at trial -- even if such documents are purportedly offered or used solely for impeachment.  Alternatively, this Court should exclude any such evidence at trial under Rule 16(d)(2).

Finally, any defense attempt to evade its discovery obligations (or its obligation to disclose witnesses and exhibits) on the grounds that defendant would be "rebutting" the United States' case is inappropriate.  Only the United States has the right to a rebuttal case, not the defendant.  The defendant's case-in-chief is his "rebuttal" opportunity.  Therefore, waiting to provide discovery (or witnesses, and/or exhibits) until after the United States rests, based on the assertion of a "rebuttal" argument, is improper, prejudicial, and risks delaying the trial.

**Motion in Limine No. 3 – Admissibility of Statements of the Defendant**

**A.      The United States Intends to Introduce Statements of the Defendant**

As the discovery produced to the defense shows, the defendant made several statements and admissions to the FBI and others.  The United States provides notice that it intends to introduce these statements into evidence at trial pursuant to Federal Rule of Evidence 801(d)(2)(A).

**B.      The Defendant May Not Introduce Any Self-Serving Hearsay**

While the Rules of Evidence allow the United States to introduce out-of-court statements of the defendants and their agents, those Rules preclude defendants from doing the same.  A plain reading of Federal Rule of Evidence 801(d)(2)(A) exempts from hearsay only those party-opponent admissions that are "offered against a party."  Fed. R. Evid. 801(d)(2).  To the extent that the defendant seeks admission at trial of his own out-of-court statements or agents acting on his behalf at trial, those statements constitute inadmissible hearsay.  This is true even if the defendant's statements may be exculpatory, and even if such exculpatory statements were not elicited on direct examination.  *See e.g., United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) (defendant's attempt to elicit exculpatory statements he made during interviews with agents was improper because "[t]hese statements were inadmissible hearsay; [and] as Mitchell was attempting to introduce them himself, they were not party-opponent admissions"); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("[T]he district court did not abuse its discretion when it limited Ortega's ability to elicit his exculpatory hearsay statements on cross-examination" because otherwise "Ortega would have been able to place his exculpatory statements before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids" (internal quotation marks and alterations omitted)).

**Motion in Limine No. 4 – Appropriate Use of FBI Reports During Examination of Witnesses**

Although production of the FBI reports was not required, in this case the United States has provided broad discovery, including such reports, for the United States' anticipated witnesses at trial.  In this circumstance, the defense should be limited to using those reports consistent with the law and rules of evidence.  In particular, the defense must be precluded from introducing the contents of the reports to impeach witnesses on the basis of inconsistent statements because the reports are not the statements of

the witnesses themselves.  Moreover, the defense must be precluded from publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the report is a statement of a witness.  To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo v. United States*, 363 U.S. 343 (1959), which held that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."  *Id.* at 350.

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an FBI report.  However, if the defense is not satisfied with the witness's answer, the defense may not read from, otherwise publish, or introduce the contents of the report as a prior inconsistent statement.  *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "[FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it").  Moreover, the defense may not use the report in a way that suggests to the jury that the report is a statement of the witness.  *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the Federal Rules of Evidence).

The United States is committed to providing broad and early discovery in this matter, and has provided FBI 302s for its witnesses at trial although such production was not required under the Jencks Act.  In turn, the defense should be instructed to use those FBI reports in accordance with the law and rules of evidence and should not be permitted to introduce the reports, publish them to the jury, or otherwise suggest to the jury that reports are statements of the witnesses.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Motion in Limine No. 5 – The Defendant May Not Raise Duress as an Affirmative Defense Unless and Until He Makes the Prerequisite *Prima Facie* Showing**

Duress is an affirmative defense that "may excuse conduct that would otherwise be punishable." *Dixon v. United States*, 548 U.S. 1, 6 (2006). At trial, a defendant raising the duress defense bears the burden of proving duress by a preponderance of the evidence. *United States v. Meraz-Solomon*, 3 F.3d 298, 299 (9th Cir. 1993). However, before being allowed to put on a duress defense, a defendant must first establish a prima facie case of duress through a pretrial offer of proof:

> We have long held that a defendant is not entitled to present a duress defense to the jury unless the defendant has made a prima facie showing of duress in a pre-trial offer of proof. Absent such a prima facie case, evidence of duress is not relevant. While the constitutional right to testify permits a defendant to choose whether or not to take the witness stand, it does not authorize a defendant to present irrelevant testimony.

*United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008) (citations and quotation marks omitted). If the proffered evidence "is insufficient as a matter of law to support a duress defense," then "the trial court should exclude that evidence." *United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984).

To be entitled to present a duress defense, and to receive a duress jury instruction, a defendant must establish three prima facie elements: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm." *United States v. Moreno*, 102 F.3d 994, 997 (9th Cir. 1996). "Fear alone is not enough to establish a prima facie case of duress; the defendant must establish all three elements." *United States v. Becerra*, 992 F.2d 960, 964 (9th Cir. 1993). "Of crucial importance in any attempt to raise duress as a defense are the elements of immediacy and opportunity to avoid the act." *Vasquez-Landaver*, 527 F.3d at 802 (quoting *United States v. Atencio*, 586 F.2d 744, 746 (9th Cir. 1978)). Furthermore, the duress defense is not "available to one who has recklessly placed himself in a dangerous situation." *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983).

To date, the defendant has failed to make a prima facie showing on any of the three elements of duress. He has proffered no evidence of an immediate threat of death or serious bodily injury; no evidence of a well-grounded fear that such a threat would be carried out unless he committed the

charged offense; and no evidence that he lacked any reasonable opportunity to escape the threat.  Unless and until the defendant establishes all three elements through a pretrial offer of proof, he is not entitled to present arguments or evidence of duress at trial, or to receive a jury instruction on the duress defense.

**Motion in Limine No. 6 – Admission of Evidence Pursuant to Federal Rule of Evidence Rule 404(b)**

The United States moves this Court for an order admitting evidence of the defendant's statements to Zepher Pellerin pursuant to Rule 404(b) of the Federal Rules of Evidence for the purposes of establishing the defendant's knowledge, motive, intent, plan, and opportunity.

On December 3, 2015, the Federal Bureau of Investigation executed a search warrant on the defendant's residence in San Francisco, California.  The defendant was not at the residence during the execution of the search warrant.  FBI agents interviewed one of the defendant's roommates, Zephr Pellerin.  (Bates no. 678-681).  Mr. Pellerin told agents about his relationship with the defendant, including how long he had lived with him, the defendant's employment history, and where the defendant's family lived.  When FBI agents informed Mr. Pellerin about the investigation into an intrusion into Embarcadero Media, he responded that he "was surprised that someone [at the residence] would stoop to that level" and could not readily identify anyone at the residence who was responsible for the intrusion.  The FBI agents asked Mr. Pellerin if he had any conversions with the defendant about computer intrusions.  Mr. Pellerin explained that the defendant told him that someone had paid him (the defendant) to change the contents of a website.  Mr. Pellerin could not recall if the defendant told him the name of the individual who paid him, but Mr. Pellerin stated that the defendant said that it was a lawyer.  The defendant further admitted to Mr. Pellerin that he was paid $50,000 in Bitcoins for modifying the website and that the defendant specifically stated that he "modified the contents of a website."

Federal Rule of Evidence 404(b) provides, in pertinent part:

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. On request by a defendant in a criminal case, the prosecutor must provide reasonable notice of the general

nature of any such evidence that the prosecutor intends to offer at trial and do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice.

It is well established that Rule 404(b) "is a rule of *inclusion* under which evidence is inadmissible *only* where it proves nothing but the defendant's criminal propensities." *United States v. Ayers,* 924 F.2d 1468, 1472 (9th Cir. 1991) (emphasis added).  Other act evidence is, as a general rule, to be admitted.  *Heath v. Cast,* 813 F.2d 254, 259 (9th Cir. 1987), *cert. denied,* 484 U.S. 849 (1987).  To be admissible under Rule 404(b), evidence of prior acts must: (1) tend to prove a material point in issue; (2) be not too remote in time; (3) be proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, be similar to the offense charged.  *See United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002).  *See also United States v. Rrapi*, 175 F.3d 742, 748-49 (9th Cir. 1999) (noting that Rule 404(b) is a rule of inclusion, and that evidence of prior bad acts may be admitted "'for the purpose of providing the context in which the charged crime occurred'") (quoting *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996)).  When the elements are satisfied, the court balances the probative value of the evidence against any prejudicial effect.  *United States v. Howell*, 231 F.3d 615, 629 (9th Cir. 2000); *United States v. Arambula-Ruiz*, 987 F.2d 599, 604 (9th Cir. 1993).  To be excluded under Rule 403, the evidence must be unfairly prejudicial and substantially outweigh the probative value of the evidence.  *See* Fed. R. Evid. 403; *see also Arambula-Ruiz*, 987 F.2d at 604.

First, the defendant's admissions that he committed a prior computer intrusion is relevant to proving a material element in the instant case.  Intent is a critical element of the charges in this case, namely, 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i) (Intentional Damage to a Protected Computer), Attempted Damage to a Protected Computer, 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(ii) (Attempted Damage to a Protected Computer), and 18 U.S.C. § 1030(a)(2)(C) (Intentionally Accessing a Protected Computer Without Authorization and to Obtain Information).  More importantly, intent will likely become the central question in this case if the defendant argues, as the government expects, that he acted under duress and was incapable of forming the intent necessary to commit the crime.

Second, the defendant's admissions to Mr. Pellerin are not too remote in time.  Although Mr. Pellerin did not inform the FBI when the defendant admitted to modifying the contents of a website, the conversation took place sometime over the three years that they lived together.  The Ninth Circuit has

13

1    adopted a flexible rule for excluding evidence of prior bad acts due to the time that has elapsed since

2    their commission. *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989). Admissibility of the

3    acts can be encouraged by their similarity to the instant offense. *Id.* For example, the court in *Spillone*,

4    approvingly noted of other circuits that admitted evidence of similar acts that occurred more than ten

5    years ago. *Id. See, e.g.*, *United States v. DeCastris*, 798 F.2d 261, 265 (7th Cir. 1986) (prior bad acts as

6    old as ten years admissible to show a pattern); *United States v. Lea*, 618 F.2d 426, 431 (prior similar

7    scheme, occurring over ten years before, admissible to show intent and motive) *cert. denied*, 449 U.S.

8    823, 101 S.Ct. 82 (1980). The court in *Spillone* upheld the admission of a defendant's conviction of a

9    similar offense even though it was 18 years earlier. *Id.* The United States seeks admission of the

10   defendant's admission to his roommate that, at most, is more than three years old, which is significantly

11   shorter than the time lapse in *Spillone*.

12       Third, the government will prove the defendant's admissions through the testimony of Mr.

13   Pellerin, which is more than sufficient to establish that the defendant claimed that he committed a prior

14   computer intrusion. Fourth, there are similarities between the act that the defendant admitted to

15   committing and in the instant offense. Prior conduct need not always be similar to the instant offense.

16   *United States v. Miller*, 874 F.2d 1255, 1268-69. However, when the prior bad act is admitted to prove

17   intent the prior act must be similar. *Spillone*, 879 F.2d at 519.

18       The defendant admitted to modifying the contents of a website and receiving a payment of

19   $50,000 in Bitcoins. In the instant offense, the government anticipates that the evidence will

20   demonstrate that the defendant accessed the corporate email accounts of several Embarcadero Media

21   employees who are responsible for the company's information technology. Embarcadero Media is an

22   on-line newspaper company headquartered in Palo Alto, California. These employees had access

23   through their email accounts to a Google drive that contained a document entitled "IT Things to

24   Remember." This document contained important information about the company's computer network

25   and contained passwords for various applications. The FBI believes that the defendant used one of the

26   passwords from this document to access Embarcadero's GoDaddy account that hosted all of the

27   company's domains and mail exhange. The defendant changed Embarcadero's mail exchange and

28   redirected their corporate email to another account. The defendant also attempted to cancel several

14

1  domain names, including PaloAltoOnline.com and AlmanacNews.com.  Thus, the defendant's

2  admission to altering a website and the instant offense of cancelling domain names and redirecting

3  corporate email are sufficiently similar.  The government's evidence meets each of the Ninth Circuit's

4  requirements for admissibility under Rule 404(b).

5         Furthermore, Mr. Pellerin's testimony of the defendant's admission is not unfairly prejudicial

6  under Rule 403, but instead is extremely probative.  The defendant's admission to a prior computer

7  intrusion has a clear connection to the issues of knowledge, intent, plan, and opportunity.  He

8  demonstrates he has knowledge regarding how to illegally access a computer network, intended to alter

9  the contents on a network, and took the opportunity to do so.  However, it is always possible that the

10  similarity between the defendant's admission and the charged offenses will improperly affect the jury's

11  deliberations.  This can be mitigated with a limiting instruction that directs the jury to consider the

12  defendant's admission only as evidence of knowledge, intent, plan, and opportunity.

13         For the foregoing reasons, the United States respectfully requests an order admitting the

14  defendant's admissions to Mr. Pellerin.

15  DATED: April 11, 2018                    Respectfully submitted,

16                                       ALEX G. TSE

17                                       Acting United States Attorney

                                     /s/

18                                       SUSAN KNIGHT

19                                       JOSEPH E. SPRINGSTEEN

                                     Assistant United States Attorneys

20

21

22

23

24

25

26

27

28