1  ALEX G. TSE (CABN 152348)
   Acting United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  SUSAN KNIGHT (CABN 209013)
   JOSEPH E. SPRINGSTEEN (DCBN 474317)
5  Assistant United States Attorneys

6      150 Almaden Boulevard, Suite 900
       San Jose, California 95113
7      Telephone: (408) 535-5061
       FAX: (408) 535-5066
8      E-Mail:Susan.Knight@usdoj.gov
               Joseph.Springsteen@usdoj.gov
9

10 Attorneys for United States of America

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15 UNITED STATES OF AMERICA,            )   No. CR 16-00168 LHK
                                        )
16        Plaintiff,                    )   UNITED STATES' REPLY TO DEFENDANT'S
                                        )   MOTION IN LIMINE REGARDING
17    v.                                )   ADMISSIBILTY OF EVIDENCE
                                        )   (Dkt. Nos. 40, 44)
18 ROSS COLBY,                          )
                                        )   Pretrial Conference:  May 2, 2018
19        Defendant.                    )   Time:  9:15 a.m.
                                        )   Trial:  May 29, 2018
20 _____ )   Court: Honorable Lucy H. Koh

21

22                           **INTRODUCTION**

23        Defendant Ross Colby's counsel has asked the Court to determine "whether any evidence of

24 intrusion into any of Embarcadero computers beyond the charged conduct of accessing employee e-mail

25 accounts at the GoDaddy account and/or deleting email accounts is admissible where the defendant . . .

26 has not been charged with such other conduct." Dkt. No. 40.

27        The defendant has been charged in Counts One and Two of an Indictment with intentional

28 damage to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(b)(i), and

1  attempted damage to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(b)(ii).

2  Count One relates the defendant illegally accessing Embarcadero Media Group's ("Embarcadero")

3  GoDaddy.com account and redirecting the company's mail exchange record to another mail server.

4  Count Two relates to the defendant's attempt to cancel four of Embarcadero's domains by illegally

5  accessing the company's account at GoDaddy.com and cancelling them.  GoDaddy.com does not

6  immediately cancel a domain after a user submits a request, and therefore, Embarcadero was able to

7  prevent the cancellation of their domains after they discovered the intrusion into their account.  The

8  government will seek to admit evidence that: 1) the defendant twice modified the contact email that was

9  listed on Embarcadero's account at GoDaddy.com on the date of the intrusion; and 2) the defendant

10  created the fictitious email account – frankbravomedia@gmail.com – in the name of Embarcadero's

11  director of information technology and listed it on Embarcadero's domain records at GoDaddy.com.

12       Counts Three through Five charge the defendant with intentionally accessing a protected

13  computer without authorization and obtaining information, in violation of 18 U.S.C. § 1030(a)(2)(C).

14  These counts allege that the defendant illegally accessed the corporate email account of "C.T."  The

15  government will seek to admit evidence that: 1) the defendant illegally accessed the corporate email

16  account of Embarcadero employee "C.T" on dates other than those listed in the indictment; and 2) the

17  defendant accessed the corporate email account of Embarcadero employees "F.B." and "C.P." and

18  Embarcadero's corporate email account "embarcaderopublishing@gmail.com."

19       The evidence listed above is admissible because it is relevant and inextricably intertwined with

20  the charged offenses.  The evidence demonstrates the scope of the defendant's conduct and allows the

21  government to provide a complete story of the charged offenses.  *See United States v. Vizcarra–*

22  *Martinez*, 66 F.3d 1006, 1012-13 (9th Cir.1995).  Alternatively, to the extent that the evidence at issue

23  does fall within Federal Rule of Evidence 404(b), it is admissible because it addresses the defendant's

24  knowledge, identity, motive, opportunity, and intent.  Therefore, the government requests that Court

25  admit the evidence at trial.

26  //

27  //

28  //

**BACKGROUND**

The Indictment charges the defendant with one count of intentional damage to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(b)(i), one count of attempted damage to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(b)(ii), and three counts of intentionally accessing a protected computer without Authorization and to obtain information, in violation of 18 U.S.C. § 1030(a)(2)(C).  These charges relate to the defendant's access and modification of Embarcadero's account at its domain registrar, GoDaddy.com, and access of email accounts belonging to Embarcadero and its employees.

On September 18, 2015, Embarcadero, which is an online, private newspaper publisher located in the San Francisco Bay Area, notified the Federal Bureau of Investigation ("FBI") regarding an intrusion into its corporate email accounts and to its GoDaddy account.  As a result of the compromise, the target (later identified as the defendant) accessed email accounts belonging to several Embarcadero employees, deleted the registration for several company-owned domains, and altered the company's mail exchange ("MX") record, preventing Embarcadero employees from receiving email.[1]

FBI Special Agent Frazier learned from "F.B.", Embarcadero's Director of Information Technology, that the target likely gained access to Embarcadero's web server and GoDaddy account by compromising one of the company's corporate email accounts.  Embarcadero hosted its corporate email through Google, and Bravo informed Special Agent Frazier that he observed numerous suspicious logins to his corporate email account, along with the corporate email accounts of his colleagues, "C.P." and "C.T."

Special Agent Frazier learned that F.B., C.P., and C.T. had access to a shared Google Docs document entitled "Things to Remember."  This document contained the usernames and passwords to a variety of Embarcadero's servers and online accounts.  Special Agent Frazier also learned from F.B. that the AlmanacNews.com, PaloAltoOnline.com, EmbarcaderoMediaGroup.com, and

---

[1] MX records are records, associated with domain names, that allow for email to be directed to the proper hosting company, in this case, Google.

1    SupportLocalJournalism.com domains were cancelled.  The domain name TourDeMenlo.com appeared

2    to have been unlocked,[2] but it was not cancelled.

3            As part of the investigation, Special Agent Frazier obtained subscriber information and login

4    history from Google for the corporate email accounts belonging to F.B., C.T., and C.P.  Reviewing the

5    records obtained from Google, Agent Frazier observed that both C.T.'s and F.B.'s account had been

6    accessed from suspicious Internet Protocol ("IP") addresses not apparently related to Embarcadero.

7    Specifically, someone using IP address 73.222.15.23 "(IP 23") logged into C.T.'s account 20 times

8    between July 23 and July 25, 2015 (Counts Three through Five).

9            In addition, Special Agent Frazier found additional accesses:

| Date Range | Account | Number of Accesses | IP Address |
|---|---|---|---|
| July 22, 2015 | C.T. | 9 | 2602:306:37fe:7040:74a7:91ed:b6e5:d0ab ("IP d0ab") |
| July 28, 2015 | C.T. | 5 | 2601:19c:0:ff5:70a8:1a3e:df8d:ad96 ("IP ad96") |
| July 29, 2015 – July 30, 2015 | C.T. | 68 | 2601:19c:0:0ff5:9588:35bd:f0c7:cdb6 ("IP cdb6") |
| July 31, 2015 | C.T. | 5 | 2601:19c:0:ff5:adec:f960:2a4b:37b4 ("IP 37b4") |
| July 31, 2015 | F.B. | 5 | 2601:19c:0:ff5:adec:f960:2a4b:37b4 ("IP 37b4") |
| August 4, 2015 – August 5, 2015 | C.T. | 18 | 2601:19c:0:ff5:4dcb:a90c:d3ae:64b8 ("IP 64b8") |
| July 29, 2015 – July 30, 2015 | F.B. | 58 | 2601:19c:0:0ff5:9588:35bd:f0c7:cdb6 ("IP cdb6") |
| August 4, 2015 – August 5, 2015 | F.B. | 16 | 2601:19c:0:ff5:4dcb:a90c:d3ae:64b8 ("IP 64b8") |
| July 30, 2015 | Embarcaderopublishing@gmail.com | 4 | 2601:19c:0:0ff5:9588:35bd:f0c7:cdb6 ("IP cdb6") |
| August 8, 2015 UTC (initial access) through September 18, 2015 UTC (last access) | C.P. | Numerous accesses from multiple IP addresses | 198.8.80.180 (initial access)<br><br>104.156.228.169 (last access) |
| August 5, 2015 UTC (initial access) through September 11, | F.B. | Numerous accesses from | 204.152.215.162 (initial access)<br><br>104.156.228.95 (last access) |

[2] "Unlocking" a domain name within a domain name registration account such as those provided by GoDaddy.com places the domain name into a mode where further changes may be made.

| 2015 UTC (last access) | | multiple IP addresses | |
| August 4, 2015 UTC (initial access) through September 18, 2015 UTC (last access) | C.P. | Numerous accesses from multiple IP addresses | 198.8.80.205 (initial access)<br><br>104.156.228.169 (last access) |

Through an open-source domain search, Special Agent Frazier learned that many of the aforementioned IP addresses resolved to the Internet service provider ("ISP") Comcast.  He obtained records from Comcast that showed that on the dates and times of the unauthorized access the following: IP ad96, IP 64b8, IP 37b4 and IP cdb6 were all assigned to Comcast customer John Colby, the defendant's father, who lives in Massachusetts.  IP 23 resolved to the defendant's residence in San Francisco.  Special Agent Frazier also obtained records from AT&T which showed that IP d0ab resolved the Flying Pig Bistro restaurant in San Francisco, California.  As discussed below, Special Agent Frazier found that many IP addresses that accessed the employees' accounts resolved to Private Internet Access, a Virtual Private Network Provider.

Special Agent Frazier also obtained records from GoDaddy.com for Embarcadero's domain account, which showed that the contact email address for Embarcadero's account was changed twice on September 17, 2015, the date of the compromise.  First, at 10:51:46 p.m., the contact email account was changed from "webmaster@embarcaderopublishing.com" to "embarcaderopublishing@gmail.com."  The second change was at 11:00:43 p.m.  The email contact was then changed from "embarcaderopublishing@gmail.com" to "frankbravomedia@gmail.com."  These changes were made from a computer assigned the IP address 50.76.45.81 ("IP 81"), which resolved to an internal Embarcadero server.  As described below, "embarcaderopublishing@gmail.com" is an older account controlled by Embarcadero that has not been used in some time, while "frankbravomedia@gmail.com" is not a legitimate Embarcadero email account.

Special Agent Frazier obtained records from Google for the "frankbravomedia@gmail.com" account and learned that it was created on September 18, 2015, at 05:56:38 (UTC) (September 17, 2015, after converting from UTC to PDT) from IP 81 and was accessed from IP 81 around the same date and

1    time that Embarcadero's GoDaddy account was compromised.  Based on the date and time in which the

2    "frankbravomedia@gmail.com account" was created and used to replace the valid email address

3    associated with Embarcadero's GoDaddy account, Special Agent Frazier believes that a deliberate

4    attempt was made to lock the company out of their account.  In other words, by changing the contact

5    email address associated with the GoDaddy account, the subject prevented Embarcadero employees

6    from receiving emails associated with updates to the account.

7         Special Agent Frazier obtained and reviewed Embarcadero's records from GoDaddy for

8    September 17, 2015.  As noted above, he found that at 11:07 p.m. and 11:19 p.m., the domains names

9    AlmanacNews.com, PaloAltoOnline.com, EmbarcaderoMediaGroup.com, and

10   SupportLocalJournalism.com were cancelled.  The domain name TourDeMenlo.com was unlocked, but

11   not cancelled.  Again, these changes came from IP 81.  Cancelling the registration for a domain name

12   removes that name from the public domain registry and dissociates the domain name from an actual

13   server in Domain Name System ("DNS") records.  This would prevent a person from reaching the

14   Embarcadero websites by typing the relevant domain name into their web browser, e.g.

15   PaloAltoOnline.com.

16        In addition, Special Agent Frazier found that the MX records for Embarcadero's business email

17   domains (EmbarcaderoPublishing.com and EPCHome.com) were altered via the GoDaddy account and

18   were deleted, and replaced with a generic mail server.  Therefore, Embarcadero could not receive any

19   email.  These changes were also made from IP 81.

20        Special Agent Frazier believes that the defendant found the "Things to Remember" document

21   stored in the Embarcadero employee email/Google Docs accounts of F.B., C.T., and/or C.P., studied the

22   document, and then used the passwords from that document to access Embarcadero's GoDaddy account.

23   F.B. believed that the GoDaddy password was not contained in the "Things to Remember" document

24   and that the company used the same passwords for multiple accounts.  He will testify that the intruder

25   likely tried Embarcadero's passwords to access the GoDaddy account.  In addition, Special Agent

26   Frazier will testify that the defendant accessed GoDaddy.com via Embarcadero's server associated with

27   IP 81, although he does not know how Colby was able to access IP 81.

28

U.S.' RESPONSE
NO. CR 16-00168 LHK                    6

Furthermore, Special Agent Frazier linked the defendant to the unauthorized access to Embarcadero's GoDaddy account.  As noted above, the subject changed the contact email address for the GoDaddy account from "webmaster@embarcaderopublishing.com" to "embarcaderopublishing @gmail.com" and then finally to "frankbravomedia@gmail.com."  Agent Frazier believes that the defendant accessed the email account "embarcaderopublishing@gmail.com" from his father's residence in Massachusetts.  Specifically, Special Agent Frazier obtained IP address log information from Google for the "embarcaderopublishing@gmail.com" account between July 30 to September 21, 2015 and found that IP cdb6, which resolved to Colby's father's home during the aforementioned timeframe, was used to access the "embarcaderopublishing@gmail.com" account.

Special Agent Frazier learned from F.B. that the email account "embarcaderopublishing @gmail.com" was a generic email account and had not been used by the company for a long period of time.  F.B. informed Special Agent Frazier that, around the time of the intrusion, he received an alert at the email address "webmaster@embarcaderopublishing.com" that showed someone had logged into "embarcaderopublishing@gmail.com."

Special Agent Frazier obtained from Google the contents and related subscriber information (including IP access logs) of the defendant's two personal email accounts: "siffer@gmail.com" and "ross.colby@gmail.com."  Reviewing the access logs, Agent Frazier observed multiple IP addresses used to access the accounts between July 28 and August 6, 2015, and found that one of the IP addresses, 2602:306:37fe:7040:74a7:91ed:b6e5:doab ("IP d0ab"), used to access the ross.colby@gmail.com account on August 4, 2015, was the same IP address used to access C.T.' corporate email account 18 times and F.B.'s corporate email account 58 times between August 4 and August 5, 2015.

Special Agent Frazier interviewed Zephr Pellerin, who was the defendant's roommate, during the execution of a search warrant at the defendant's residence on December 3, 2015.  The government anticipates that will testify that he had lived the defendant for approximately 3.5 years, that the defendant had previously traveled to Boston sometime in mid-2015 to visit his family, and that the defendant was the only one in the household who regularly ate at the "Flying Pig" cafe, the restaurant located across the street from the residence.  He will also state that he had conversations with the

1   defendant about computer intrusions, and the defendant had said something about "this" in the past.

2   Specifically, Pellerin remembered the defendant admitting that he "modified the contents of a website."[3]

3          Finally, Special Agent Frazier reviewed other IP addresses that were used to access

4   Embarcadero's accounts at the relevant dates and times.  Several of these IP addresses are associated

5   with the Private Internet Access ("PIA") owned by London Trust Media.  PIA, available at the website

6   privateinternetaccess.com, is a Virtual Private Network ("VPN") provider.[4]  Special Agent Frazier will

7   testify that although, for the reasons described above, he could not link the PIA IP addresses used in the

8   Embarcadero hack directly with the defendant, IP logs for the defendant's personal email accounts show

9   that he had used PIA's VPN service to access his own email on occasion.  As part of Special Agent

10  Frazier's interview of Pellerin, Pellerin stated that around mid-2015, the defendant talked to Pellerin

11  about using VPNs such as F-Secure and PIA, and asked Pellerin to help him configure a VPN with PIA.

12  As a result, Pellerin assisted the defendant with the configuration, including showing the defendant how

13  to download a list of IP addresses for PIA's VPN services.

14         For Count One, the government must prove that the defendant "knowingly caused the

15  transmission of a program, code, command, or information," and "intentionally caused damage without

16  authorization to a computer."  The government must prove the same elements for Count Two, with the

17  exception that it must prove that the defendant "intentionally attempted to cause damage without

18  authorization to a computer."  For Counts Three through Five, the government must prove that the

19  defendant "intentionally accessed without authorization a computer" and "obtained information."  *See*

20  Government's Proposed Jury Instructions No. 39, 40, 42 (Dkt. No. 36).  Thus, introducing complete

21  evidence of the defendant's modification of Embarcadero's GoDaddy.com account and intrusion into

22  the corporate email accounts of Embarcadero employees is crucial to presenting an accurate picture of

23  the defendant's activities and establishing his intent.

24

25         [3] The government has filed a motion in limine to allow this statement into evidence.  *See* Dkt. No. 38.

26         [4] VPNs are typically used by individuals and businesses to encrypt Internet connections for

27  security, but are also used in some cases by criminals to obscure their true IP address.  Certain VPN providers, including PIA, advertise that they do not keep logs regarding IP addresses assigned to

28  customers; therefore, they are unable to identify the customer associated with a particular IP address at a given date and time in response to government process such as a grand jury subpoena.

**ARGUMENT**

I.   **Complete Evidence of the Defendant's Intrusion into Embarcadero's GoDaddy.com Account and Corporate Email Accounts Is Not Other Acts Evidence.**

    **A.  The Evidence is Inextricably Intertwined.**

"Evidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense."  *United States v. Beckman*, 298 F.3d 788, 793–94 (9th Cir.2002) (*citing United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir.1995).  This exception may be triggered in one of two ways.

First, it applies when other-acts "evidence . . . constitutes a part of the transaction that serves as the basis for the criminal charge." *Vizcarra–Martinez*, 66 F.3d at 1012.  For example, in *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993), the Ninth Circuit found that "contemporaneous sales of cocaine and crank by the defendant were inextricably intertwined evidence with the crime with which the defendant was charged:  the sale of cocaine.  *See Vizcarra–Martinez*, 66 F.3d at 1012-13.  The Court further stated that "the policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode; become other acts simply because the defendant 'is indicted for less than all of his actions.'"  *Id*.  (quoting *Williams*, 989 F.2d at 1070 (quoting *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir. 1987)).

Second, the exception applies when "other act" evidence is necessary:

> to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime.

*Vizcarra–Martinez*, 66 F.3d at 1012–13.

Thus, other-acts evidence is necessary because "[t]he jury cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."  *Id*.  (quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984).

//

//

//

**B.  Evidence of the Modification of Embarcadero's GoDaddy.com Account is Part of Counts One and Two and Demonstrates the Scope of the Defendant's Conduct.**

The government seeks to admit evidence that the defendant changed the contact email address for Embarcadero's account twice on September 17, 2015, the date of the compromise.  At 10:51:46 p.m., the contact email account was changed from "emailwebmaster@embarcaderopublishing.com" to "embarcaderopublishing@gmail.com."  The second change was at 11:00:43 p.m.  The email contact was changed from "embarcaderopublishing@gmail.com" to "frankbravomedia @gmail.com."  These changes were made from a computer assigned the IP address 50.76.45.81 ("IP 81"), which resolved to an internal Embarcadero server.  As F.B. will testify at trial, "embarcaderopublishing@gmail.com" is an older account controlled by Embarcadero that has not been used in some time, and that the "frankbravomedia@gmail.com" email address is not a legitimate Embarcadero email account.

The government also seeks to admit evidence that the "frankbravomedia@gmail.com" account was created on September 18, 2015, at 05:56:38 (UTC) (September 17, 2015, after converting from UTC to PDT) from IP 81 and was accessed from IP 81 around the same date and time that Embarcadero's GoDaddy account was compromised.

This evidence demonstrates the circumstances in which the defendant intended to cause damage to Embarcadero's mail exchange records at GoDaddy.com and his attempt to cancel four of Embarcadero's domains.  In addition, the evidence is essential in explaining the charged conduct by showing the defendant's plan to prevent Embarcadero from learning about the changes he made to the company's GoDaddy account.  By changing the email addresses, the defendant locked the company out of its GoDaddy account and thereby prevented the company from being notified about the alterations and immediately taking steps to remedying them.

Furthermore, the evidence will allows the government to tell a complete story to the jury about the steps the defendant took during the time he illegally accessed Embarcadero's GoDaddy.com account.  *See Vizcarra–Martinez*, 66 F.3d at 1013.  Therefore, the government requests that the Court find that the evidence is inextricably intertwined with Counts One and Two and admit it at trial.

//

//

**C.  Evidence of Intrusions into Other Embarcadero Accounts Are Part of the Same Series of Intrusions in Counts Three through Five and Demonstrates the Scope of the Defendant's Conduct.**

In Counts Three through Five, the defendant is charged with accessing the corporate email account of Embarcadero employee C.T. on July 23, 2015, July 24, 2015, and July 25, 2015.  As contained in the chart below, the government seeks to introduce evidence that he defendant accessed C.T.'s account on other dates.  In addition, the government seeks to introduce evidence that the defendant accessed the email accounts of Embarcadero employee's F.B., C.P., and a corporate email account as outlined below:

| Date Range | Account | Number of Accesses | IP Address |
|---|---|---|---|
| July 22, 2015 | C.T. | 9 | 2602:306:37fe:7040:74a7:91ed:b6e5:d0ab (IP d0ab) <br> Resolves to the Flying Pig Restaurant |
| July 28, 2015 | C.T. | 5 | 2601:19c:0:ff5:70a8:1a3e:df8d:ad96 (IP ad96) <br> Resolves to John Colby's residence |
| July 29, 2015 – July 30, 2015 | C.T. | 68 | 2601:19c:0:0ff5:9588:35bd:f0c7:cdb6 ("IP cdb6") <br> Resolves to John Colby's residence |
| July 31, 2015 | C.T. | 5 | 2601:19c:0:ff5:adec:f960:2a4b:37b4 (IP 37b4) <br> Resolves to John Colby's residence |
| July 31, 2015 | F.B. | 5 | 2601:19c:0:ff5:adec:f960:2a4b:37b4 (IP 37b4) <br> Resolves to John Colby's residence |
| August 4, 2015 – August 5, 2015 | C.T. | 18 | 2601:19c:0:ff5:4dcb:a90c:d3ae:64b8 (IP 64b8) <br> Resolves to John Colby's residence |
| July 29, 2015 – July 30, 2015 | F.B. | 58 | 2601:19c:0:0ff5:9588:35bd:f0c7:cdb6 ("IP cdb6") <br> Resolves to John Colby's residence |
| August 4, 2015 – August 5, 2015 | F.B. | 16 | 2601:19c:0:ff5:4dcb:a90c:d3ae:64b8 (IP 64b8) <br> Resolves to John Colby's residence |
| July 30, 2015 | Embarcaderopublishing@gmail.com | 4 | 2601:19c:0:0ff5:9588:35bd:f0c7:cdb6 ("IP cdb6") <br> Resolves to John Colby's residence |
| August 8, 2015 UTC (initial access) through September 18, | C.P. | Numerous accesses from multiple IP addresses | 198.8.80.180 (initial access) <br><br> 104.156.228.169 (last access) <br><br> All IP address resolved to PIA |

| | | | |
|---|---|---|---|
| 2015 UTC (last access) | | | |
| August 5, 2015 UTC (initial access) through September 11, 2015 UTC (last access) | F.B. | Numerous accesses from multiple IP addresses | 204.152.215.162 (initial access)<br><br>104.156.228.95 (last access)<br><br>All IP address resolved to PIA |
| August 4, 2015 UTC (initial access) through September 18, 2015 UTC (last access) | C.P. | Numerous accesses from multiple IP addresses | 198.8.80.205 (initial access)<br><br>104.156.228.169 (last access)<br><br>All IP address resolved to PIA |

The defendant's access of Embarcadero's corporate email account and the accounts of employees C.T., F.B., and C.P. are plainly part of the same series of transactions that make up the charged offenses in Counts Three through Five.  The accesses occurred from July 22, 2015 through August 5, 2015, which is at or near the same time of the charged accesses of July 23, 2015 through July 25, 2015.  The accesses are circumstantial evidence linking the defendant to the intrusion by demonstrating that the accesses resolved to the defendant's father's residence in Boston and a San Francisco restaurant called the Flying Pig.  They are also circumstantial evidence of the defendant illegally intruding into the Embarcadero accounts using a VPN.  As noted above, the government anticipates that Zephr Pellerin, the defendant's roommate, will testify that the defendant regularly ate at the Flying Pig, and that in mid-2015, he showed the defendant how to establish an account with PIA, which is a VPN provider.

Furthermore, the accesses took place prior to the intrusion into Embarcadero's GoDaddy account on September 17, 2015 and are circumstantial evidence that the defendant studied the contents of the accounts, including by having access to Embarcadero's "Things to Remember" document that contained Embarcadero's passwords.  Armed with these passwords, the defendant had the ability to use them to access the company's GoDaddy account.  Therefore, this evidence is admissible as intrinsic to Counts Three through Five.  *See Williams* at 989 F.2d at 1070 (holding that evidence that he defendant sold

1  crank and cocaine outside the charged time period of a cocaine distribution conspiracy was "inextricable

2  from and provided necessary context for [] testimony about the charged conduct.").

3       Finally, the evidence of other accesses demonstrates the scope of the defendant's conduct and

4  provides context between the email intrusion and the redirection of Embarcadero's mail records and

5  cancellation of their domains.

6  **II.  The Defendant's Modifications to Embarcadero's GoDaddy.com and Intrusion into Other**

7         **Email Accounts of Embarcadero Are Admissible Other Acts Pursuant to Federal Rule of Evidence 404(b).**

8       The evidence that the defendant modified Embarcadero's GoDaddy.com account by changing

9  the contact email address, including creating a fictitious email address in the name of Embarcadero's

10  director of information technology, and illegally accessing additional corporate email accounts of

11  Embarcadero employees is admissible under Rule 404(b) for purposes of establishing motive,

12  opportunity, intent, and knowledge.

13       Federal Rule of Evidence 404(b) provides, in pertinent part:

14  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in

15  order to show that on a particular occasion the person acted in accordance with the character.

16  This evidence may be admissible for another purpose, such as proving motive,

17  opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of

18  accident. On request by a defendant in a criminal case, the prosecutor must provide reasonable notice of the general nature of any such evidence that the prosecutor intends to

19  offer at trial and do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice.

20

21       It is well established that Rule 404(b) "is a rule of *inclusion* under which evidence is

22  inadmissible *only* where it proves nothing but the defendant's criminal propensities." *United States v.*

23  *Ayers,* 924 F.2d 1468, 1472 (9th Cir. 1991) (emphasis added).  Other act evidence is, as a general rule,

24  to be admitted. *Heath v. Cast,* 813 F.2d 254, 259 (9th Cir. 1987), *cert. denied,* 484 U.S. 849 (1987).  To

25  be admissible under Rule 404(b), evidence of prior acts must: (1) tend to prove a material point in issue;

26  (2) be not too remote in time; (3) be proven with evidence sufficient to show that the act was committed;

27  and (4) if admitted to prove intent, be similar to the offense charged.  *See United States v. Beckman*, 298

28  F.3d 788, 794 (9th Cir. 2002).  *See also United States v. Rrapi*, 175 F.3d 742, 748-49 (9th Cir. 1999)

1 (noting that Rule 404(b) is a rule of inclusion, and that evidence of prior bad acts may be admitted "'for

2 the purpose of providing the context in which the charged crime occurred'") (quoting *United States v.*

3 *Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996)).  When the elements are satisfied, the court balances the

4 probative value of the evidence against any prejudicial effect.  *United States v. Howell*, 231 F.3d 615,

5 629 (9th Cir. 2000); *United States v. Arambula-Ruiz*, 987 F.2d 599, 604 (9th Cir. 1993).  To be excluded

6 under Rule 403, the evidence must be unfairly prejudicial and substantially outweigh the probative value

7 of the evidence.  *See* Fed. R. Evid. 403; *see also Arambula-Ruiz*, 987 F.2d at 604.

8     Finally, the evidence of the defendant's alteration of Embarcadero's account at GoDaddy.com to

9 twice revise the contact email address, including the use of a fictitious email, and accesses to other

10 Embarcadero email accounts, is not unfairly prejudicial under Federal Rule of Evidence 403, but instead

11 extremely probative.  For evidence to be unfairly prejudicial it must have an "undue tendency to suggest

12 a decision on an improper basis such as emotion or character rather than evidence presented on the

13 crime charged."  *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991).  Here, the proffered

14 evidence is probative of the defendant's identity and intent to harm Embarcadero, as well as his plan and

15 knowledge regarding the offenses charged in the indictment.

16     To the extent that the admission of any of this highly probative evidence under Rule 404(b) may

17 raise any issues, the Court can cure this prejudice by issuing a limiting instruction.  *See United States v.*

18 *Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004).

19                              **CONCLUSION**

20     The government respectfully requests that the Court admit the evidence set forth herein because

21 it is inextricably intertwined with the charged conduct or it is permissible "other acts" evidence falling

22 within Rule 404(b).

23 DATED:  April 23, 2018                    Respectfully submitted,

24                                          ALEX G. TSE
                                           Acting United States Attorney

25

26                                          /s/
                                           SUSAN KNIGHT

27                                          JOSEPH E. SPRINGSTEEN
                                           Assistant United States Attorneys

28