ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

SUSAN KNIGHT (CABN 209013)
JOSEPH E. SPRINGSTEEN (DCBN 474317)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    E-Mail: Susan.Knight@usdoj.gov
            Joseph.Springsteen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 17-00168 LHK |
| Plaintiff, | ) |
| | ) UNITED STATES' REPLY TO WITNESS JOY |
| | ) BERTRAND'S MOTION TO VACATE ORDER TO |
| v. | ) PRODUCE DOCUMENTS AND TESTIFY AT AN |
| | ) EVIDENTIARY HEARING |
| ROSS COLBY, | ) |
| | ) Date: May 24, 2018 |
| Defendant. | ) Time: 2:00 p.m. |
| | ) |

**INTRODUCTION**

On May 21, 2018, Joy Bertrand, the defendant's former counsel, filed a motion to vacate the Court's Order for her to produce documents and appear at an evidentiary hearing on May 24, 2018 concerning her communications with the defendant regarding a proffer with the United States Attorney's Office and the Federal Bureau of Investigation on May 17, 2016. Pursuant to the Court's Order, the government responds to Bertrand's motion.

//

//

//

1

**BACKGROUND**

Bertrand represented the defendant in the above-captioned case from December 2015 to approximately April 11, 2017. *See* Decl. of Joy Bertrand, Dkt. No. 88. On May 17, 2016, the defendant, and Bertrand participated in a proffer session with AUSA Susan Knight and FBI Special Agents Scott Hellman and Anthony Frazier. *See* Dkt. No. 66, Transcript of Evidentiary Hearing at 119-20.

The case was set for trial, and the defendant subsequently filed a motion in limine claiming that he did not make a knowing and voluntary wavier when he signed the proffer agreement on May 17, 2016. *See* Dkt. No. 43 at 2-5. In a supplemental brief ordered by the Court, the government disputed the defendant's recitation of events concerning the proffer agreement and argued that the waiver was knowing and voluntary. *See* Dkt. No. 50. The government later filed declarations from AUSA Knight, and FBI Special Agents Hellman and Frazier regarding the proffer session. *See* Dkt. No. 56, 65.

On May 2, 2018, the Court held an evidentiary hearing in which AUSA Knight and the defendant testified regarding the terms of the proffer agreement and the circumstances in which the defendant entered into it. *See* Dkt. No. 66. Prior to the defendant's testimony, his current counsel, Vicki Young, stated the following:

> Your Honor, prior to starting, since during the – I just wanted to indicate that since we will be discussing conversations Mr. Colby had with his prior counsel, we would submit to the Court that there would be a limited waiver in terms of the discussion – of attorney-client privilege in terms of the discussions for the proffer agreement.
>
> I don't think – we're not waiving all his attorney-client privilege in terms of representation by Ms. Bertrand.

*Id.* at 46:6-14.

The Court asked for the government's position regarding the waiver, and AUSA Joseph Springsteen stated that the government did not object. *See id.* at 46:14-16.

After AUSA Knight and the defendant testified, AUSA Knight raised the issue of the defendant's waiver of his attorney-client privilege:

> AUSA Knight: I think Mr. Colby needs to waive attorney-client privilege.
>
> The Court: He's already waived it. He's testified about exactly everything she said to him about this meeting and about this phone call. That's waived.

*Id.* at 153:4-8.

The Court and the parties discussed whether additional testimony from Bertrand or FBI Special Agents Hellman and Frazier was necessary in order to complete the record. *See id.* at 151-155. The Court stated that it was "curious to know what Ms. Bertrand told Mr. Colby about the meeting" and contacted Bertrand by calling her office. *Id.* at 155; 162-63. The Court informed Bertrand that the defendant filed a motion to prohibit the government from introducing his proffer session statements on May 17, 2016 on the basis that he did not knowing and voluntarily enter into the proffer agreement. *Id.* at 163:23-25; 164:1. The Court explained to Bertrand that:

> Mr. Colby waived privilege today and ha[d] testified extensively.
>
> But your testimony on this point in a declaration I think would be sufficient and is going to be key because he is saying that you never explained the proffer agreement to him, that you never went over it with him, that you never gave it to him before it was handed to him by Ms. Knight at the meeting on May 17, 2016.
>
> And so – and that you never spoke to him about the proffer agreement or any of its provisions. So your declaration would be extremely helpful.

*Id.* at 164:2-12.

The Court requested Bertrand appear in person or submit a declaration. *See id.* at 164:23-25; 165:1-3. The Court and Bertrand discussed their schedules, and Bertrand's appearance was eventually set for May 24, 2018 at 2:00 p.m. *See id.* at 165-169.

On May 3, 2018, the Court ordered Bertrand to produce any documents to defense counsel and the government indicating that she "informed Defendant of the proffer agreement and its terms, the government's use of any statements made by Defendant at the May 17, 2016 proffer session, or the purpose of scheduling of the May 17, 2016 proffer session." Dkt. No. 61.

On May 21, 2018, Bertrand filed the instant motion to vacate the Court's Order to produce documents and to appear at the evidentiary hearing on May 24, 2018.

The government will call FBI Special Agent Hellman to testify at 10:00 a.m. on May 24, 2018, and anticipates that his testimony (direct and cross) will last no more than one hour.

//

//

3

# DISCUSSION

## I. The Defendant Properly Waived the Attorney-Client Privilege.

The attorney-client privilege is strictly construed because it impedes full and free discovery of the truth. *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). It has been "widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Id*. A client need not be informed of the consequences of waiving the privilege, because even inadvertent disclosure does not, as a matter of law, prevent a valid waiver. *Id*. Furthermore, a litigant implicitly waives the attorney-client privilege by putting his lawyer's performance at issue during the course of litigation, preventing a party from using the privilege as both a shield and a sword. *Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003). In other words, "parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged [information]." *Id*. at 719.

The defendant explicitly waived the attorney-client privilege regarding the proffer agreement during the May 2, 2018 evidentiary hearing by submitting to the Court "a limited waiver . . . of attorney-client privilege in terms of the discussions for the proffer agreement." While even inadvertent disclosures can validly waive the attorney-client privilege, the defendant's waiver on May 2 was intentional and definitively outlined the parameters of the waiver. The defendant need not be informed of the endless downstream consequences of waiver to validly waive the privilege, such as the attorney later being called to testify. Here, the defendant testified within the outlined scope of the waiver at the evidentiary hearing, illustrating his understanding of the waiver. In addition, by claiming that Bertrand never explained the proffer agreement to him and raising the issue of his lawyer's performance, he implicitly waived the privilege. Bertrand improperly seeks to introduce to the Court an additional inquiry into the defendant's subjective state of mind to determine if his waiver was valid, when the defendant would not be able to challenge the voluntariness of the proffer agreement in the first place without necessarily waiving the attorney client privilege to discuss it. The defendant thus validly waived the attorney-client privilege as to discussions surrounding the proffer agreement during the May 2, 2018 hearing - which was acknowledged by the Court later in the hearing - and the Court's decision regarding the waiver should remain undisturbed.

**II.       The Court Is Empowered to Order Bertrand to Testify.**

Bertrand relies on *United States v. Bergeson*, 426 F.3d 1221 (9th Cir. 2005) and the United States Attorney Manual of the Department of Justice to support the conclusion that she cannot be compelled to testify in a criminal case absent compulsory process. Dkt. No. 87, Bertrand Motion to Vacate Order at 9-10. Bertrand's reliance is misguided. *Bergeson* upheld the quashing of a prosecutor's subpoena of a criminal defense lawyer to testify against her client before a grand jury, when the client had not waived attorney-client privilege. 425 F.3d at 1223. Here, the defendant has validly waived privilege, as discussed *supra* Part I. More pointedly, it is the Court that has ordered Bertrand to appear, in stark contrast to the subpoena issued by the prosecutor for a grand jury in *Bergeson*. By similar logic, the Department of Justice Guidelines do not apply since it is the Court, rather than the Government, who has ordered Bertrand to testify, and the Court is not bound by the Guidelines.

The Court has jurisdiction over Bertrand in order to obtain relevant information to rule on the defendant's motion. It is of no consequence if Bertrand is considered an adverse witness or not, since she has relevant information that is important to assist the Court in reaching a decision on the defendant's motion. In addition, as Bertrand's Motion to Vacate Order points out, the Court has jurisdiction over a non-party in a criminal case if there is a closely related claim and dispute between a criminal defendant and a non-party. *United States v. Polishan*, 19 F.Supp.2d 327 (M.D. Pa. 1989). Given the defendant is a former client of Bertrand, the defendant has raised a serious issue that she never advised him about the May 2016 proffer agreement, and then proceeded to allow him to confess, the claim that "there is no present relationship or dispute between Defendant and Bertrand," (Bertrand Motion to Vacate Order at 11), is not accurate.

**III.      Bertrand's Testimony Is Necessary to Complete the Record.**

Bertrand's testimony is not only lawful, but also necessary. She argues "independent evidence" exists in this case to assess the defendant's knowledge before signing the agreement, and "no possible purpose could be served" in calling her to testify, since she is not in a "position to rebut Colby's subjective understanding as to the meaning of what was said regarding the May 17, 2016 proffer agreement." Bertrand Motion to Vacate Order at 9. However, Bertrand is in a unique position to add to the weight of evidence already obtained by the Court and to shed light on the defendant's testimony

from the May 2, 2018 evidentiary hearing.  Bertrand's testimony, unlike other witnesses called at the hearing, can provide the Court with her impressions of the defendant's understanding and state of mind before signing the proffer agreement, as well as additional insights into any conversations regarding the agreement with her client.  Moreover, it is not up to Bertrand, an ex parte witness, to decide if the record before the Court on this issue is adequate, especially in light of the Court's determination that her testimony will be "key" and "extremely helpful."  Bertrand's testimony will undoubtedly add important information to the record about the events surrounding the proffer agreement that cannot come from AUSA Knight or FBI Special Agents Hellman and Frazier.  No alternative source of this information exists.  Thus, the Court should compel Bertrand's appearance given the risk of an incomplete and deficient record.

**IV.     The Court Can Evaluate Each Question to Avoid Any Incriminating Testimony.**

While Bertrand claims that the privilege against self-incrimination is a barrier to appearing and testifying, (Bertrand Motion to Vacate Order at 13-14), there are several safeguards in place that reveal this concern to be overstated.  First, the defendant's waiver of attorney-client privilege is limited to discussions about the May 2016 proffer agreement.  His current counsel specifically noted this during the May 2, 2018 evidentiary hearing, reiterating to the Court that he was "not waiving all his attorney-client privilege in terms of representation by Ms. Bertrand."  Second, the Court can evaluate each question by the Government at the hearing and avoid any potential prejudice to the defendant.  Last, Bertrand is entitled to assert the privilege against self-incrimination on behalf of her client in the rare instance that a question reaches beyond the scope of the defendant's waiver and the Court instructs the witness to answer.  The Court's need for a complete record plainly outweighs Bertrand's exaggerated concern about placing the "privilege [against] self-incrimination in harm's way," (Bertrand Motion to Vacate Order at 14), given the Court's impartial oversight of the hearing and remote chance Bertrand will be asked a question beyond the scope of the waiver.

**V.      The Government Objects to Any In Camera Testimony.**

Given that the defendant has waived his attorney-client privilege regarding the terms of the proffer agreement, the Government objects to any in camera testimony.

**CONCLUSION**

For the reasons stated above, the United States respectfully requests that the Court order Bertrand to appear on May 24, 2018 and produce documents as directed in the Court's May 3, 2018 Order.

DATED: May 22, 2018

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

/s/
SUSAN KNIGHT
JOSEPH E. SPRINGSTEEN
Assistant United States Attorneys