```
1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
2                         SAN JOSE DIVISION

3

4      UNITED STATES OF AMERICA,       )  CR-17-00168 LHK
                                       )
5                     PLAINTIFF,       )  SAN JOSE, CALIFORNIA
                                       )
6           VS.                        )  JUNE 6, 2018
                                       )
7      ROSS COLBY,                     )  VOLUME 6
                                       )
8                     DEFENDANT.       )  PAGES 1 - 54
       _____)
9

10

11                     TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE LUCY H. KOH
12                  UNITED STATES DISTRICT JUDGE

13

14     A P P E A R A N C E S:

15     FOR THE PLAINTIFF:      UNITED STATES ATTORNEY'S OFFICE
                               BY:  SUSAN F. KNIGHT
16                                  JOSEPH E. SPRINGSTEEN
                               150 ALMADEN BOULEVARD, SUITE 900
17                             SAN JOSE, CALIFORNIA  95113

18     FOR THE DEFENDANT:      LAW OFFICES OF VICKI H. YOUNG
                               BY:  VICKI H. YOUNG
19                             2211 PARK BOULEVARD
                               PALO ALTO, CALIFORNIA  94306
20

21     ALSO PRESENT:          ANTHONY "MONTE" FRAZIER
                              LAKISHA HOLLIMAN
22

23     OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                   CERTIFICATE NUMBER 9595
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1       SAN JOSE, CALIFORNIA                    JUNE 6, 2018

 2                     P R O C E E D I N G S

 3            (JURY OUT AT 11:24 A.M.)

 4                 THE COURT:  OKAY.  GOOD MORNING AND WELCOME.

 5                 THE CLERK:  PLEASE BE SEATED.

 6            YOUR HONOR, CALLING CASE 17-CR-00168, UNITED STATES OF

 7       AMERICA VERSUS ROSS COLBY.

 8                 COUNSEL, PLEASE STATE YOUR APPEARANCES.

 9                 MS. KNIGHT:  GOOD MORNING, YOUR HONOR.

10            SUSAN KNIGHT FOR THE UNITED STATES.

11                 MS. YOUNG:  GOOD MORNING, YOUR HONOR.

12            VICKI YOUNG WITH ROSS COLBY.

13                 THE COURT:  ALL RIGHT.  GOOD MORNING AND WELCOME.

14            DO YOU HAVE A COPY OF JURY NOTE NUMBER 1 AND NUMBER 2?

15                 MS. KNIGHT:  YES, YOUR HONOR.

16                 MS. YOUNG:  YES, YOUR HONOR.

17                 THE COURT:  OKAY.  WHAT ARE YOUR PROPOSED RESPONSES?

18                 MS. KNIGHT:  FOR NOTE NUMBER 1, FOR THE FIRST TWO

19       QUESTIONS, THE GOVERNMENT WOULD RECOMMEND THAT THEY BE REFERRED

20       TO THE INSTRUCTIONS.

21                 THE COURT:  TO A SPECIFIC ONE, OR JUST TO SAY "YOU

22       ARE REFERRED TO THE FINAL JURY INSTRUCTIONS"?  I USUALLY AM

23       RELUCTANT TO PLACE UNDUE EMPHASIS ON A SPECIFIC INSTRUCTION;

24       BUT ON THE OTHER HAND, IF THERE'S NO OBJECTION, I'M FINE WITH

25       POINTING THEM TO --
```

 1            MS. KNIGHT:  I THINK JUST POINTING THEM GLOBALLY TO

 2    THE INSTRUCTIONS.  THE GOVERNMENT IS UNCOMFORTABLE, LIKE THE

 3    COURT, WITH POINTING THEM TO A SPECIFIC INSTRUCTION.

 4            I DON'T KNOW HOW MS. YOUNG FEELS.

 5            THE COURT:  OR WE COULD POINT THEM AT 3.2, WHICH JUST

 6    SAYS "THE DEFENDANT DOES NOT HAVE TO TESTIFY OR PRESENT ANY

 7    EVIDENCE.  THE DEFENDANT DOES NOT HAVE TO PROVE INNOCENCE.  THE

 8    GOVERNMENT HAS THE BURDEN OF PROVING EVERY ELEMENT OF THE

 9    CHARGES BEYOND A REASONABLE DOUBT."

10            MS. YOUNG:  YOUR HONOR, I WAS GOING TO REQUEST THAT

11    THE COURT REFER THE JURY TO 3.2 FOR THOSE TWO QUESTIONS.

12            MS. KNIGHT:  I THINK THAT'S FINE.  I MEAN, THAT'S A

13    VERY GENERIC INSTRUCTION.  I THINK THAT'S FINE.

14            THE COURT:  OKAY.  AND THEN WHAT I WOULD DO IS I

15    WOULD ADD THE FOLLOWING SENTENCE FROM 3.1, WHICH SAYS, "YOU

16    MUST FOLLOW ALL OF THE FINAL JURY INSTRUCTIONS AND NOT SINGLE

17    OUT SOME AND IGNORE OTHERS; THEY ARE ALL IMPORTANT."  SO I'LL

18    ADD THAT, WHICH I THINK SOMEWHAT CURES ANY UNDUE EMPHASIS

19    CONCERNS.

20            AND THEN AS FAR AS THE LAST QUESTION, I'LL JUST SAY, "YOU

21    HAVE RECEIVED ALL OF THE EVIDENCE THAT YOU MAY CONSIDER.

22    THEREFORE, YOU CANNOT" -- YOU KNOW, "WE WILL NOT GIVE YOU A

23    COMPUTER TO DO YOUR OWN DEMONSTRATION OF A THEORY."

24            MS. KNIGHT:  WE AGREE WITH THAT, YOUR HONOR.

25            THE COURT:  OKAY.  ALL RIGHT.

1    SO THIS FIRST INSTRUCTION, GIVE ME THE LANGUAGE -- SHOULD

2    I JUST SAY AS -- "AS FOR YOUR FIRST TWO QUESTIONS" --

3              MS. YOUNG:  PLEASE REVIEW INSTRUCTION 3.2.

4              MS. KNIGHT:  I DIRECT YOU TO --

5              MS. YOUNG:  OR DIRECT YOU TO, SOMETHING LIKE THAT.

6    WORDS TO THAT EFFECT.

7              MS. KNIGHT:  YEAH.

8              THE COURT:  OKAY.  AS FOR --

9         (PAUSE IN PROCEEDINGS.)

10             THE COURT:  HMM.  I MAY HAVE MIS -- MISQUOTED WHAT WE

11   HAD AGREED TO AS FAR AS THE LAST QUESTION.  "AS FOR YOUR LAST

12   QUESTION, YOU HAVE RECEIVED ALL THE EVIDENCE YOU MAY CONSIDER.

13   THEREFORE, WE WILL NOT GIVE YOU A COMPUTER TO DEMONSTRATE A

14   THEORY."

15        IS THAT SUFFICIENT?  OR DO YOU WANT TO SAY "YOU MAY ONLY

16   CONSIDER THE EVIDENCE ADMITTED AT TRIAL"?

17             MS. YOUNG:  YOUR HONOR, THERE'S NOT A JURY

18   INSTRUCTION -- WELL, I'M JUST THINKING, IN MY MEMORY --

19   OBVIOUSLY WE KNOW NOTHING ELSE IS SUPPOSED TO GO IN THE JURY

20   ROOM AND THEY'RE NOT SUPPOSED TO CONSIDER ANYTHING OUTSIDE THE

21   COURTROOM.

22        BUT MY MEMORY IS -- I'M NOT SURE.  IS THAT A JURY

23   INSTRUCTION OR IS THAT JUST SOMETHING THAT IS TOLD TO THEM AT

24   SOME POINT?

25             THE COURT:  JURY INSTRUCTION NUMBER 3.6, WHAT IS

1    EVIDENCE.  "THE SWORN TESTIMONY OF ANY WITNESS, THE EXHIBITS

2    RECEIVED IN EVIDENCE, AND ANY FACTS TO WHICH THE PARTIES HAVE

3    AGREED."

4            MS. YOUNG:  ALL RIGHT.

5            THE COURT:  SO I THINK I CAN SAY, "AS FOR YOUR LAST

6    QUESTION, YOU HAVE RECEIVED ALL THE EVIDENCE YOU MAY CONSIDER.

7    PLEASE REFER TO JURY INSTRUCTION NUMBER 3.6."

8            MS. KNIGHT:  I THINK THAT COVERS IT, YOUR HONOR.

9            MS. YOUNG:  THERE'S ONLY ONE -- WELL --

10           THE COURT:  WHAT WERE YOU GOING TO SAY?

11           MS. YOUNG:  WELL, YOUR HONOR, WHEN YOU -- WHEN THE

12   COURT STATED "YOU'VE RECEIVED ALL THE EVIDENCE YOU MAY

13   CONSIDER," I AM NOW LOOKING AT QUESTION NUMBER 2, WHICH DOESN'T

14   REALLY TALK ABOUT EVIDENCE, BUT TALKS ABOUT THEORIES, AND I'M

15   CONCERNED THAT THERE'S GOING TO BE SOME OVERLAP THAT IN THEIR

16   CONSIDERATION OF NOTE NUMBER 2, THAT THEY THINK THEY'RE

17   PRECLUDED FROM CONSIDERING OTHER THEORIES.

18       BUT I GUESS WE'LL --

19           THE COURT:  THEY DIDN'T SAY "CONSIDER."  THEY SAID

20   "DEMONSTRATE."  THEY SAID DEMO A THEORY.

21           MS. KNIGHT:  YEAH.

22           MS. YOUNG:  IN TERMS OF QUESTION 1, I THINK THAT

23   LANGUAGE WAS APPROPRIATE.

24       I GUESS I'LL ADDRESS MY OTHER CONCERNS WHEN WE GET TO

25   QUESTION 2.

```
1           THE COURT:  NO.  QUESTION 2 IS ANSWERED BY 3.2.

2       ARE YOU TALKING ABOUT JURY NOTE NUMBER 2?

3           MS. YOUNG:  I WAS TALKING ABOUT JURY NOTE NUMBER 2.

4           THE COURT:  OH, OKAY.  I'M STILL ON JURY NOTE

5   NUMBER 1, AND THERE ARE THREE QUESTIONS IN JURY NOTE NUMBER 1.

6           MS. YOUNG:  THAT WAS THE CONFUSION.  I'M SORRY.

7       THERE'S NOTES AND QUESTIONS.  I'M SORRY.

8           THE COURT:  ALL RIGHT.  SO HERE IS THE WRITTEN

9   RESPONSE TO NUMBER 1, WHICH I WILL QUOTE:  "AS FOR YOUR FIRST

10  TWO QUESTIONS, PLEASE REFER TO FINAL JURY INSTRUCTION NUMBER

11  3.2.  HOWEVER, YOU MUST FOLLOW ALL OF THE FINAL JURY

12  INSTRUCTIONS AND NOT SINGLE OUT SOME AND IGNORE OTHERS.  ALL OF

13  THE FINAL JURY INSTRUCTIONS ARE IMPORTANT.

14      "AS FOR YOUR LAST QUESTION, YOU HAVE RECEIVED ALL THE

15  EVIDENCE YOU MAY CONSIDER.  PLEASE REFER TO FINAL JURY

16  INSTRUCTION NUMBER 3.6.  THEREFORE, WE WILL NOT GIVE YOU A

17  COMPUTER TO DEMO A THEORY."

18      IS THAT SATISFACTORY?

19          MS. KNIGHT:  YES, YOUR HONOR.  THANK YOU.

20          THE COURT:  MS. YOUNG, IS THAT SATISFACTORY?

21          MS. YOUNG:  THAT'S FINE, YOUR HONOR.

22          THE COURT:  OKAY.

23      OH, WHAT IS THE TIME NOW?

24          THE CLERK:  11:33, YOUR HONOR.

25          THE COURT:  OKAY.  AND IT'S JUNE 6TH; CORRECT?
```

1           THE CLERK:  YES, YOUR HONOR.

2           THE COURT:  ALL RIGHT.  MS. MASON, I'M GOING TO GIVE

3     YOU THIS ONE.  IF YOU CAN PLEASE MAKE A COPY, FILE IT, I'D LIKE

4     A COPY OF THE FILED VERSION, AND THEN GIVE THE ORIGINAL TO THE

5     JURY.  THANK YOU.

6           THE CLERK:  YES, YOUR HONOR.

7           THE COURT:  ALL RIGHT.  LET'S GO TO JUROR NOTE

8     NUMBER 2.  WHAT'S YOUR PROPOSAL AS TO HOW TO RESPOND TO THIS

9     QUESTION?

10          MS. KNIGHT:  YOUR HONOR, I THINK, AGAIN, THE

11    GOVERNMENT RECOMMENDS THAT THEY GO BACK TO THE INSTRUCTIONS.

12          THE COURT:  AND WHICH ONES?  I THINK GOING BACK TO

13    3.2 IS APPROPRIATE.

14          MS. KNIGHT:  UM-HUM.

15          THE COURT:  BUT THEN DO WE GO BACK TO REASONABLE

16    DOUBT?  3.2 AND 3.5?  AND THEN HAVE THE SAME CURATIVE LANGUAGE

17    THAT "YOU MUST FOLLOW ALL OF THE FINAL JURY INSTRUCTIONS AND

18    NOT SINGLE OUT SOME AND IGNORE OTHERS; THEY ARE ALL IMPORTANT"?

19    WHAT'S YOUR THOUGHT?

20          MS. KNIGHT:  SO WE WERE LOOKING AT 3.2.

21          THE COURT:  YES, 3.2 SAYS, "DEFENDANT DOES NOT HAVE

22    TO TESTIFY OR PRESENT ANY EVIDENCE.  THE DEFENDANT DOES NOT

23    HAVE TO PROVE INNOCENCE.  THE GOVERNMENT HAS THE BURDEN OF

24    PROVING EVERY ELEMENT OF THE CHARGES BEYOND A REASONABLE

25    DOUBT."

```
 1            AND THEN 3.5 WOULD BE REASONABLE DOUBT DEFINED.

 2            MS. KNIGHT:  AND THEN 3.6 AND 3.7 ON WHAT IS EVIDENCE

 3    AND WHAT IS NOT EVIDENCE.

 4            MS. YOUNG:  YOUR HONOR, THAT -- I'M CONCERNED THAT IN

 5    TERMS OF NOTE NUMBER 2, IN REFERRING TO WHAT IS -- WELL, THIS

 6    SAYS THE EVIDENCE YOU ARE TO CONSIDER IN DECIDING WHAT THE

 7    FACTS ARE, SO THAT IS CORRECT.

 8            BUT I'M CONCERNED THAT THE JURY IS GOING TO INTERPRET A

 9    RESPONSE INCLUDING 3.6 TO FORECLOSE THEIR CONSIDERATION OF ANY

10    THEORIES.  BUT I DON'T KNOW HOW TO -- THIS SAYS "SHOULD THIS

11    POSSIBILITY NOT BE ALLOWED IN DETERMINING"?

12            IN FACT, THERE WAS TESTIMONY BY SPECIAL AGENT HELLMAN OF

13    MALWARE AS A POSSIBILITY.  IT WAS IN HIS TESTIMONY.  SO THERE

14    IS SOME TESTIMONY ABOUT MALWARE.  I CERTAINLY DID NOT ARGUE IT.

15            BUT I --

16            THE COURT:  I DON'T RECALL MALWARE.

17    I DO RECALL REMOTE LOGIN.

18            MS. KNIGHT:  REMOTE LOGINS.

19            MS. YOUNG:  BUT THAT WAS A --

20            THE COURT:  REMOTE LOGIN, NOT MALWARE.

21            MS. KNIGHT:  BUT THAT WAS VERY BRIEF.

22            MS. YOUNG:  IT WAS REMOTE, BUT IT HAD TO DO WITH

23    REMOTE LOGIN.

24            THE COURT:  THEN YOU SHOULD HAVE NO PROBLEM WITH

25    CITING 3.6 THEN.
```

```
 1            MS. YOUNG:  ALL RIGHT.

 2            THE COURT:  SO THEN SHOULD I SAY "PLEASE REFER TO

 3    JURY INSTRUCTION NUMBERS 3.2, 3.5, 3.6 AND 3.7.  HOWEVER, YOU

 4    MUST FOLLOW ALL OF THE FINAL JURY INSTRUCTIONS AND NOT SINGLE

 5    OUT SOME AND IGNORE OTHERS.  ALL OF THE FINAL JURY INSTRUCTIONS

 6    ARE IMPORTANT."

 7            MS. KNIGHT:  I THINK THAT'S FINE, YOUR HONOR, BECAUSE

 8    YOU'RE EMPHASIZING CERTAIN INSTRUCTIONS, BUT ALSO GIVING THEM

 9    THE CAVEAT THAT ALL THE INSTRUCTIONS ARE IMPORTANT AS A WHOLE.

10            THE COURT:  OKAY.

11        WERE YOU GOING TO SAY SOMETHING, MS. YOUNG?

12            MS. YOUNG:  YES, YOUR HONOR.  I -- MY MEMORY IS THAT

13    THERE WAS TESTIMONY REGARDING THE POSSIBILITY OF REMOTE LOGINS.

14    THERE WAS TESTIMONY.  WE DID NOT RAISE THE POSSIBILITY, BUT

15    THERE WAS TESTIMONY.

16        SO SHOULD THERE BE ANY INDICATION THAT THERE WAS TESTIMONY

17    REGARDING REMOTE LOGIN -- I'M JUST CONCERNED THAT THE LANGUAGE

18    THAT WE'RE GIVING THEM IS GOING TO SUGGEST THAT THERE WASN'T

19    EVIDENCE -- THAT THERE WASN'T EVIDENCE OF REMOTE -- OF THE

20    POSSIBILITY OF REMOTE LOGIN.  I BELIEVE THERE WAS EVIDENCE OF

21    IT.

22        I DO AGREE I DID NOT ARGUE IT.

23            MS. KNIGHT:  THERE WAS BRIEF TESTIMONY.  BUT WE'D

24    OBJECT TO ANY, ANY WAY OF -- THEY NEED TO RELY ON THEIR OWN

25    MEMORY, THEIR OWN NOTES.  I DON'T WANT TO DIRECT THEM TO WHAT
```

```
1     WAS SAID OR WHAT WASN'T SAID.

2              THE COURT:  I ALSO UNDERSTOOD THE TESTIMONY TO BE

3     THAT -- AT THE LEAST THE GOVERNMENT'S POSITION WAS THAT

4     MR. COLBY COULD BE REMOTE LOGGING IN TO EVEN THE FLYING PIG

5     BISTRO FROM MASSACHUSETTS.  I UNDERSTOOD THAT THAT TESTIMONY

6     WAS IN THAT LIGHT.

7          BUT IT COULD BE INTERPRETED EITHER WAY, THAT ANYONE COULD

8     BE DOING A REMOTE LOGIN.

9              MS. KNIGHT:  YEAH.

10             THE COURT:  I DIDN'T SENSE THAT IT WAS LIMITED TO

11    REMOTE LOGINS BY OTHER ACTORS AND NOT MR. COLBY IS MY

12    RECOLLECTION.

13         BUT I -- I COULD BE WRONG ON THAT, THAT IT WAS SOMEWHAT

14    OPEN-ENDED.

15             MS. YOUNG:  IT WAS VERY BROAD.

16             MS. KNIGHT:  IT WAS AN OPEN-ENDED QUESTION.

17             THE COURT:  COULD SOMEBODY REMOTE LOGIN FROM A

18    DIFFERENT GEOGRAPHIC LOCATION?  THAT TESTIMONY IS IN THE

19    RECORD, I AGREE.

20             MS. KNIGHT:  AND FACTUALLY, I THINK WE SHOULD NOT

21    REFERENCE ANY FACTS.  I THINK IT'S UP TO THEM TO REMEMBER BASED

22    ON THEIR NOTES AND THEIR MEMORY WITHOUT DISCUSSING FACTS.  I

23    THINK POINTING TO THE INSTRUCTIONS, THE INSTRUCTIONS GLOBALLY,

24    WITHOUT REFERENCING FACTS --

25             THE COURT:  I'M NOT GOING TO SAY, "THERE WAS
```

 1    TESTIMONY AS TO X, BUT NOT Y."  I'M NOT GOING TO DO THAT.  THAT

 2    IS INAPPROPRIATE.  THAT IS PLACING UNDUE EMPHASIS ON SPECIFIC

 3    EVIDENCE, WHICH I DON'T THINK IS APPROPRIATE.

 4              MS. YOUNG:  I DO HAVE --

 5              THE COURT:  AND I DON'T THINK THERE WAS SPECIFICALLY

 6    TESTIMONY OF REMOTE LOGINS BY OTHER ACTORS.  IT WAS JUST THAT

 7    IT WAS POSSIBLE TO DO A REMOTE LOGIN FROM A DIFFERENT LOCATION

 8    THAN, YOU KNOW, WHERE THE I.P. ADDRESS IS REGISTERED.  I THINK

 9    THAT'S THE LIMIT OF THE TESTIMONY.

10              MS. KNIGHT:  IT WAS EXTREMELY BRIEF.

11              THE COURT:  THERE WAS NO IMPLICATION, AS I WAS

12    LISTENING TO IT, THAT IT WAS ANYONE OTHER THAN MR. COLBY

13    PERHAPS REMOTE LOGGING IN TO FLYING PIG BISTRO FROM SOME OTHER

14    LOCATION.

15              MS. YOUNG:  YOUR HONOR --

16              THE COURT:  YES.

17              MS. YOUNG:  -- IN --

18              THE COURT:  WE COULD ALSO INCLUDE CIRCUMSTANTIAL

19    EVIDENCE.  DO YOU WANT THAT, THE DIRECT AND CIRCUMSTANTIAL

20    EVIDENCE?

21              MS. YOUNG:  I WAS LOOKING AT 3.7 IN TERMS OF WHAT IS

22    NOT EVIDENCE TALKING ABOUT THE QUESTIONS AND STATEMENTS AND

23    ARGUMENTS BY THE LAWYERS ARE NOT EVIDENCE, BECAUSE I'M TRYING

24    TO SEPARATE OUT WHAT -- HOW I READ THEIR NOTE SAYING THE

25    ATTORNEY DIDN'T ARGUE IT VERSUS WHETHER THERE WAS EVIDENCE OF

```
 1          IT.

 2                I'M WONDERING WHETHER INCLUDING PARAGRAPH 1 OF INSTRUCTION

 3     3.7 SHOULD BE INCLUDED IN YOUR RESPONSE.

 4          I'M JUST --

 5                THE COURT:  OH, I WAS GOING TO INCLUDE 3.7 IN ITS

 6     ENTIRETY.

 7                MS. YOUNG:  ALL RIGHT.

 8                THE COURT:  I'M NOT GOING TO SPECIFY PARAGRAPHS.

 9                MS. YOUNG:  OKAY.

10                THE COURT:  IT WAS GOING TO BE A CITATION TO 3.2,

11     WHICH IS PRESUMPTION OF INNOCENCE, BURDEN OF PROOF.

12                MS. YOUNG:  UM-HUM.

13                THE COURT:  3.5, REASONABLE DOUBT DEFINED.

14                MS. YOUNG:  OKAY.

15                THE COURT:  3.6, WHAT IS EVIDENCE; 3.7, WHAT IS NOT

16     EVIDENCE; AND THEN THE INSTRUCTION THAT YOU HAVE TO FOLLOW ALL

17     THE FINAL JURY INSTRUCTIONS.

18                MS. YOUNG:  YES.  I WOULD -- I THINK THAT WOULD BE

19     FINE THEN, YOUR HONOR.  I WOULD NOT --

20                THE COURT:  INCLUDE ANYTHING ELSE?

21                MS. YOUNG:  I WOULD OBJECT TO GETTING INTO DIRECT AND

22     CIRCUMSTANTIAL, BUT --

23                THE COURT:  OKAY.  SO ANY OBJECTION TO ME WRITING IT

24     UP AS I'VE JUST PROPOSED?

25                MS. KNIGHT:  NO, YOUR HONOR.  THANK YOU.
```

```
 1                THE COURT:  OKAY.

 2           (PAUSE IN PROCEEDINGS.)

 3                THE COURT:  I'M WORRIED THAT THEY'RE GOING TO BE

 4      WRITING NEW SOFTWARE IN THERE.

 5                MS. YOUNG:  YOUR HONOR, WE THOUGHT PERHAPS THEY WERE

 6      GOING TO BE -- THEY'VE ALREADY ACCESSED EMBARCADERO FROM IN

 7      THERE AND WE DON'T KNOW IT.

 8           (LAUGHTER.)

 9                THE COURT:  THEY'RE DEMO'ING THEORIES.  LIKE SOMEONE

10      HAS WRITTEN AN APPLICATION PROGRAM THAT WE DON'T KNOW ABOUT.

11                MS. YOUNG:  BY THE WAY, I JUST HAPPEN TO BE WORKING

12      THIS, I CAN SHOW IT TO YOU ON MY COMPUTER.

13           (LAUGHTER.)

14                THE COURT:  YEAH.  SO --

15           OKAY.  SO THIS SAYS PLEASE REFER TO FINAL JURY

16      INSTRUCTIONS 3.2, WHICH IS PRESUMPTION OF INNOCENCE, BURDEN OF

17      PROOF; 3.5, WHICH IS REASONABLE DOUBT DEFINED; 3.6, WHAT IS

18      EVIDENCE; 3.7, WHAT IS NOT EVIDENCE; AND THEN I'M GOING TO ADD

19      THE CAUTIONARY INSTRUCTION.

20           (PAUSE IN PROCEEDINGS.)

21                THE COURT:  ALL RIGHT.  SO THIS IS WHAT I WROTE:

22      "PLEASE REFER TO FINAL JURY INSTRUCTIONS 3.2, 3.5, 3.6, AND

23      3.7.  HOWEVER, YOU MUST FOLLOW ALL OF THE FINAL JURY

24      INSTRUCTIONS AND NOT SINGLE OUT SOME AND IGNORE OTHERS.  ALL OF

25      THE FINAL JURY INSTRUCTIONS ARE IMPORTANT."
```

```
 1              IS THAT A SATISFACTORY RESPONSE TO JUROR NOTE NUMBER 2?

 2                   MS. KNIGHT:  YES, YOUR HONOR.  THANK YOU.

 3                   MS. YOUNG:  YES, YOUR HONOR.

 4                   THE COURT:  ALL RIGHT.  THEN I'LL SIGN THIS RIGHT

 5      NOW.

 6              AND, MS. MASON, WHAT'S THE TIME, PLEASE?

 7                   THE CLERK:  11:44.

 8                   THE COURT:  11:44.  OKAY.

 9              THEN WE WILL SEND THIS NOTE IN AND WE WILL BE IN TOUCH IF

10      WE GET ANOTHER NOTE.

11              OKAY.  THANK YOU.

12                   THE DEFENDANT:  THANK YOU.

13              (A RECESS WAS TAKEN PENDING THE JURY'S DELIBERATIONS.)

14              (JURY OUT AT 2:03 P.M.)

15                   THE CLERK:  YOUR HONOR, CALLING CASE 17-CR-00168,

16      UNITED STATES OF AMERICA VERSUS ROSS COLBY.

17              COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

18                   MS. KNIGHT:  GOOD AFTERNOON, YOUR HONOR.

19              SUSAN KNIGHT FOR THE UNITED STATES, ALONG WITH

20      JOE SPRINGSTEEN.

21                   MS. YOUNG:  GOOD AFTERNOON, YOUR HONOR.

22              VICKI YOUNG APPEARING WITH ROSS COLBY.

23                   THE COURT:  GOOD AFTERNOON.

24                   MS. KNIGHT:  THIS MORNING, YOUR HONOR, BILL JOHNSON

25      CALLED MY OFFICE AND MATT PARRELLA, JOE SPRINGSTEEN, AND I
```

1    SPOKE TO HIM.  HE REPORTED TO US THAT HE DID SOME RESEARCH AND

2    HE DISCOVERED THAT THERE WAS AN ARTICLE PUBLISHED IN DECEMBER

3    OF 2013 WITH RESPECT TO AN INDIVIDUAL NAMED HIRUY AMANUEL'S

4    CIVIL LAWSUIT AGAINST MENLO PARK POLICE OFFICERS.

5         HE THEN TOLD US THAT THERE WAS AN UPDATE TO THAT ARTICLE

6    THAT WAS PUBLISHED IN NOVEMBER OF 2014.  HE ALSO FOUND, THROUGH

7    THEIR INVESTIGATION, THAT THE ARTICLE THAT WAS PUBLISHED ON

8    DECEMBER -- IN DECEMBER OF 2013 WAS DELETED FROM THEIR SYSTEM.

9         FURTHERMORE, HE LEARNED THAT ANOTHER ARTICLE, A SEPARATE

10   ARTICLE REGARDING THE MENLO PARK POLICE OFFICERS, HAD BEEN

11   CHANGED, SPECIFICALLY, ALL OF THE NAMES OF THE POLICE OFFICERS,

12   INCLUDING HIRUY AMANUEL'S NAME, HAD BEEN CHANGED.

13        RIGHT NOW --

14        THE COURT:  I'M SORRY.  WERE THESE ALSO DONE ON

15   SEPTEMBER 17TH OF 2015?  OR WE DON'T KNOW WHEN THOSE CHANGES

16   WERE MADE?

17        MS. KNIGHT:  WE DON'T KNOW WHEN THOSE CHANGES WERE

18   MADE.  CHRIS PLANESSI, AS WE SPEAK, HAS BEEN LOOKING THROUGH

19   THE SYSTEM TO SEE IF THERE'S ANY WEB LOGS TO DETERMINE WHEN

20   THESE CHANGES WERE MADE.  WE BELIEVE THEY WERE MADE AFTER

21   NOVEMBER 2014 BECAUSE THAT'S WHEN THE ARTICLE WAS UPDATED.

22        THAT'S WHAT WE KNOW AT THIS TIME.  THE FBI INTERVIEWED

23   MR. JOHNSON.  THEY ARE DRAFTING A REPORT.

24        AND I WILL PROVIDE COPIES OF THIS ARTICLE TO MS. YOUNG.

25        WE THOUGHT, OUT OF AN ABUNDANCE OF CAUTION, THAT WE'D

1    BRING IT TO MS. YOUNG'S ATTENTION AND THE COURT'S ATTENTION,

2    AND WE HOPE TO HAVE SOME MORE INFORMATION LATER TODAY REGARDING

3    ANY I.P. ADDRESSES THAT ARE LINKED TO THESE CHANGES.

4            THE COURT:  OKAY.  TELL ME AGAIN WHEN THE CHANGES

5    WERE MADE, OR YOU DON'T KNOW.

6            MS. KNIGHT:  WE KNOW -- WE DON'T KNOW.  WE KNOW AN

7    ARTICLE WAS PUBLISHED, THE FIRST ARTICLE WAS PUBLISHED IN

8    DECEMBER OF 2013.  THERE WAS --

9            THE COURT:  IN THE PALO ALTO ONLINE?

10            MS. KNIGHT:  IN THE PALO ALTO ONLINE?

11        IN THE PALO ALTO ALMANAC.

12        THERE WAS AN UPDATE TO THAT ARTICLE BY THE EDITOR IN

13    NOVEMBER OF 2014.

14            THE COURT:  OKAY.  AND THEN, THEN WHEN WERE THE

15    CHANGES TO THESE NOTICED?

16            MS. KNIGHT:  THEY WERE NOTICED TODAY -- LAST NIGHT,

17    YOUR HONOR, BY MR. JOHNSON.  AND THEN HE NOTIFIED THE

18    GOVERNMENT AND WE TALKED TO HIM THIS MORNING.

19            THE COURT:  I'M UNCLEAR.  I THOUGHT YOU SAID YOU

20    THOUGHT THAT MAYBE SOME OF THESE CHANGES WERE DONE IN 2013 OR

21    2014.

22            MS. KNIGHT:  EXACTLY.  SO WHAT --

23            THE COURT:  SO THIS IS POTENTIALLY EXCULPATORY, OR

24    THIS IS INCULPATORY?

25        WHAT DO YOU WANT ME TO DO?  I HAVE A JURY THAT'S BEEN

```
 1        DELIBERATING NOW FOR --

 2               MS. KNIGHT:  WE THINK THE CHANGES HAVE BEEN MADE

 3        AFTER 2014.

 4           WE ARE STILL EVALUATING WHETHER IT'S EXCULPATORY OR NOT.

 5        I BELIEVE AT THIS POINT WE DO NOT HAVE ENOUGH INFORMATION TO

 6        DETERMINE WHETHER IT'S EXCULPATORY OR NOT.

 7           THIS -- WE BELIEVE, FROM SPEAKING WITH MR. JOHNSON, THE

 8        CHANGES TO THESE ARTICLES WERE MADE AFTER NOVEMBER '14, BUT WE

 9        HOPE TO HAVE MORE INFORMATION TODAY REGARDING WHETHER THE --

10        YOU KNOW, IF THERE'S ANY MORE IDENTIFYING INFORMATION.

11               THE COURT:  SO IF IT'S EXCULPATORY, THEN WHAT DO I

12        DO?  DECLARE A MISTRIAL AND THEN WE START ALL OVER?  IS THAT

13        IT?

14           OR IF IT'S INCULPATORY, THEN I ASSUME THE DEFENDANT WANTS

15        TO GO FORWARD WITH -- AND CONTINUE THIS JURY DELIBERATION.

16        WHAT'S THE --

17               MS. KNIGHT:  REGARDING THE EXCULPATORY, WE NEED TO DO

18        SOME RESEARCH.  I HATE TO TELL THAT TO THE COURT.  WE NEED TO

19        FINALIZE THE FACTS AND DO SOME RESEARCH ON WHETHER IT'S

20        EXCULPATORY OR NOT.  WE HOPE TO ADVISE THE COURT LATER TODAY.

21           IT MIGHT ALSO BE INCULPATORY.

22           SO WE ARE JUST CONTINUING TO FIND OUT AS MUCH AS POSSIBLE.

23        I KNOW THE COURT'S READ THE DEFENDANT'S PROFFER STATEMENT.

24        RATHER THAN GETTING INTO THAT, IT MIGHT BE INCULPATORY.  WE

25        JUST DON'T KNOW.
```

```
 1              THE COURT:  WHAT DOES THE PROFFER STATEMENT HAVE

 2     ABOUT DATES, THOUGH?

 3              (PAUSE IN PROCEEDINGS.)

 4              THE COURT:  THIS SHOULD HAVE BEEN DONE BEFORE.  THIS

 5     INVESTIGATION HAS BEEN GOING ON SINCE SEPTEMBER OF 2015.  WHY

 6     IS IT COMING UP THREE YEARS LATE?

 7              MS. KNIGHT:  MR. JOHNSON NOTIFIED US ABOUT IT AND I

 8     BELIEVE HE JUST YESTERDAY DID RESEARCH ON HIS OWN AND --

 9              THE COURT:  WHY DIDN'T HE DO THIS BEFORE?  WE JUST

10     WENT THROUGH A WHOLE TRIAL.

11              LET ME HEAR FROM MS. YOUNG.

12              MS. YOUNG:  YOUR HONOR, IT'S DIFFICULT TO RESPOND

13     HAVING JUST HEARD THIS INFORMATION.

14              SO IN TERMS OF WHAT THE APPROPRIATE ACTION SHOULD BE AT

15     THIS POINT, MY REQUEST AT THIS POINT IS THAT THE JURY CONTINUE

16     DELIBERATING.  I DON'T KNOW EXACTLY WHAT THE REPORTS ARE GOING

17     TO SAY, SO I CAN'T MAKE ANY DETERMINATION CERTAINLY AS TO WHAT

18     SHOULD OCCUR.

19              CERTAINLY I CONCUR WITH THE COURT THAT IT IS BEYOND LATE

20     SINCE THE CASE IS WITH THE JURY.

21              THE COURT:  THE FIRST PROFFER THAT RAISED THE ISSUE

22     OF MR. AMANUEL AND THIS MENLO PARK POLICE OFFICER WAS DECEMBER,

23     MID-DECEMBER OF 2015, OKAY?  SO CLEARLY EMBARCADERO MEDIA AND

24     THE GOVERNMENT HAVE BEEN ON NOTICE.

25              AND THEN BASED ON THE PROFFER OF MAY 17, 2016,
```

1    EMBARCADERO MEDIA AND THE GOVERNMENT HAVE BEEN ON NOTICE OF

2    WHAT MR. COLBY SAID, THAT MR. AMANUEL HIRED HIM.  SO --

3              MS. KNIGHT:  YOUR HONOR, IF I --

4              THE COURT:  SO THIS WAS SOMETHING THAT SHOULD HAVE

5    BEEN RESEARCHED BEFORE WE JUST FINISHED TRIAL AND WE HAVE A

6    JURY THAT'S BEEN DELIBERATING FOR TWO DAYS.

7              MS. KNIGHT:  EMBARCADERO MEDIA WAS NOT AWARE OF

8    MR. HIRUY'S NAME UNTIL VERY RECENTLY.

9              THE COURT:  UNTIL WHEN?  IT CERTAINLY CAME UP ON

10   MAY 2ND WHEN HE TESTIFIED DURING THE EVIDENTIARY HEARING THAT

11   WAS OPEN TO THE PUBLIC.

12       I WANT A BRIEF ON WHAT HAPPENS IF IT TURNS OUT THIS IS

13   EXCULPATORY.  DO I DECLARE A MISTRIAL AND WE START OVER?

14   SHOULD I THEN -- I AGREE WITH MS. YOUNG, AT THIS POINT I'M NOT

15   GOING TO HAVE THIS JURY STOP DELIBERATING.

16       BUT I WANT THIS BRIEFED.  WHAT HAPPENS IF IT'S

17   EXCULPATORY?  IF IT'S EXCULPATORY, THEN I DO DECLARE A

18   MISTRIAL?  I THINK I DO.

19              MS. YOUNG:  YOUR HONOR --

20              THE COURT:  YEAH?

21              MS. YOUNG:  -- SINCE CERTAINLY I'M INTRIGUED BY THE

22   JURY'S EARLIER NOTES, I DON'T -- SINCE I DON'T KNOW WHICH WAY

23   THIS INFORMATION IS GOING --

24              THE COURT:  UM-HUM.  IT COULD BE INCULPATORY, WHICH

25   I'M SURE THEN YOU WOULD WANT THIS JUST TO GO FORWARD.

1             MS. YOUNG:  AND GIVEN WHERE WE ARE IN TIMING, EVEN IF

2    IT WERE EXCULPATORY, GIVEN WHEN IT JUST CAME TO OUR

3    ATTENTION --

4             THE COURT:  UM-HUM.

5             MS. YOUNG:  -- IF THERE WERE A CONVICTION, THAT MAY

6    BE, IN MY MIND, GROUNDS FOR A MOTION FOR A NEW TRIAL AND THE

7    COURT COULD REVIEW IT AT THAT POINT.

8         I'M JUST GOING THROUGH IN MY MIND DIFFERENT OPTIONS.

9             THE COURT:  UM-HUM.

10            MS. YOUNG:  SO SINCE WE DON'T HAVE ALL THE

11   INFORMATION YET, I DON'T KNOW WHAT ELSE TO SAY HAVING HEARD

12   THIS INFORMATION AT THE SAME TIME THE COURT DID.

13            THE COURT:  OKAY.  I WOULD LIKE A BRIEF ON WHAT

14   HAPPENS IF IT'S EXCULPATORY.  DO I HAVE TO HAVE A NEW TRIAL?

15   DO I DECLARE A MISTRIAL IN THIS CASE?  DO I DISCHARGE THE JURY?

16   OR NOT?

17        WHEN ARE YOU GOING TO GET THAT TO ME?  BECAUSE THIS ISSUE

18   MAY COME UP; RIGHT?

19            MS. KNIGHT:  YES.

20            THE COURT:  I WANT --

21            MS. KNIGHT:  WE CAN HAVE SOMETHING TO YOU BY

22   5:00 P.M.

23            THE COURT:  OKAY.

24            MS. YOUNG:  YOUR HONOR, IN TERMS OF A MISTRIAL --

25            THE COURT:  DO YOU WANT TO RESPOND TO THEIR FILING?

1     I WOULD LIKE YOU TO RESEARCH THE ISSUE AS WELL.  WHAT DO WE DO,

2     WHETHER IT'S INCULPATORY OR EXCULPATORY?

3          I'M ASSUMING IF IT'S INCULPATORY, THEN WE JUST GO FORWARD.

4          IF IT'S EXCULPATORY, THEN I NEED TO KNOW, DO I DECLARE A

5     MISTRIAL?  OR DO WE JUST DEAL WITH THIS IN A POST-TRIAL MOTION

6     AND POTENTIALLY -- I DON'T KNOW -- POTENTIALLY HAVE TO RETRY

7     THIS CASE?

8          MS. YOUNG:  BUT, YOUR HONOR, IF IT'S A MISTRIAL BASED

9     ON THE FAILURE OF THE GOVERNMENT TO INVESTIGATE, THEN THAT IS A

10    MISTRIAL CAUSED BY THE GOVERNMENT'S CONDUCT AND I WOULD SUBMIT

11    THERE ARE DOUBLE JEOPARDY ISSUES.

12         MS. KNIGHT:  I THINK WE NEED TO RESEARCH THE ISSUE,

13    YOUR HONOR.  I CAN'T RESPOND TO THAT.

14         THE COURT:  UM-HUM.  ALL RIGHT.  WELL, THEN, IF THERE

15    WOULD BE DOUBLE JEOPARDY, THEN WE WOULDN'T TRY IT AGAIN AND THE

16    CHARGES WOULD EFFECTIVELY BE DISMISSED.

17         OKAY.  BRIEF IT, PLEASE.

18         MS. KNIGHT:  OKAY.

19         THE COURT:  IS THERE ANYTHING ELSE THAT'S BEING

20    RESEARCHED RIGHT NOW THAT WE'RE GOING TO FIND OUT ABOUT THAT

21    SHOULD HAVE BEEN INVESTIGATED THREE YEARS AGO?

22         MS. KNIGHT:  NO, YOUR HONOR.

23         THE COURT:  ARE YOU SURE?  DO YOU WANT TO CHECK WITH

24    THEM?  WHAT ELSE ARE THEY INVESTIGATING RIGHT NOW THAT'S GOING

25    TO BE NEW INFORMATION?

```
1              MS. KNIGHT:  NOTHING ELSE, YOUR HONOR.

2              THE COURT:  ARE YOU SURE?  HAVE YOU ASKED THEM?  DID

3     YOU KNOW THAT THEY WERE DOING THIS INVESTIGATION LAST NIGHT

4     WHILE THE JURY IS DELIBERATING?

5              MS. KNIGHT:  NO, I DID NOT.

6              THE COURT:  OKAY.  ASK THEM RIGHT NOW, IS THERE

7     ANYTHING ELSE THAT'S BEING INVESTIGATED RIGHT NOW?

8          (PAUSE IN PROCEEDINGS.)

9              MS. KNIGHT:  YOUR HONOR, MR. JOHNSON IS IN THE

10    COURTROOM AND HE JUST NODDED HIS HEAD TO INDICATE NO, THERE'S

11    NO FURTHER INVESTIGATION.

12             THE COURT:  ALL RIGHT.  SO THE GOVERNMENT IS GOING TO

13    FILE ITS BRIEF ON WHETHER I DECLARE A MISTRIAL, WHETHER THERE'S

14    DOUBLE JEOPARDY, WHETHER THIS CASE SHOULD JUST BE DISMISSED BY

15    5:00 O'CLOCK TODAY.

16         WHEN ARE YOU GOING TO RESPOND, MS. YOUNG?

17             MS. YOUNG:  TOMORROW MORNING?  OR --

18             THE COURT:  OKAY.  WHAT TIME?  I MEAN, YOU SHOULD BE

19    RESEARCHING IT NOW, RIGHT, DOWNSTAIRS IN THE ATTORNEY'S LOUNGE.

20             MS. YOUNG:  I WILL BE RESEARCHING -- I APPRECIATE

21    THAT, YOUR HONOR.  I'M NOT PLANNING TO --

22             THE COURT:  THERE'S NO REASON WHY THESE BRIEFS CAN'T

23    BE SIMULTANEOUS EITHER; RIGHT?

24             MS. YOUNG:  I WILL DO WHAT I CAN.

25             THE COURT:  YOU WANT TO JUST BOTH FILE AT 6:00
```

```
 1        O'CLOCK TODAY?

 2              MS. YOUNG:  7:00?

 3              THE COURT:  THAT'S FINE.  OKAY.  BOTH PARTIES SHOULD

 4    JUST FILE AT 7:00 O'CLOCK TODAY.  BOTH, YOU KNOW, WHAT HAPPENS

 5    IF IT'S INCULPATORY, WHAT HAPPENS IF IT'S EXCULPATORY?

 6              AND THEN YOU SHOULD, YOU KNOW, DO THE VARIOUS SORT OF

 7    PERMUTATIONS.

 8              IF THE JURY ACQUITS, THEN I THINK DOUBLE JEOPARDY WOULD

 9    ATTACH AND THEY COULDN'T BRING NEW CHARGES BASED ON THIS NEW

10    INFORMATION IF IT TURNS OUT IT'S INCULPATORY.

11              IF THE JURY CONVICTS, THEN LET ME KNOW, DO WE DEAL WITH

12    THIS IN A POST-TRIAL MOTION AND IS IT -- HAS JEOPARDY ATTACHED

13    SUCH THAT -- WELL, JUST LET ME KNOW.  PLAY OUT THE DIFFERENT

14    PERMUTATIONS OF WHAT COULD HAPPEN GOING FORWARD.  OKAY?

15              MS. KNIGHT:  OKAY.

16              THE COURT:  ALL RIGHT.  I HAVE FIVE OTHER CASES GOING

17    ON RIGHT NOW.

18              MS. KNIGHT:  THANK YOU.

19         (A RECESS WAS TAKEN PENDING THE JURY'S DELIBERATIONS.)

20         (JURY IN AT 3:36 P.M.)

21              THE COURT:  ALL RIGHT.  WELCOME BACK.  PLEASE TAKE A

22    SEAT.

23         WOULD THE FOREPERSON PLEASE IDENTIFY HIM OR HERSELF?

24              JUROR:  THAT'S ME, YOUR HONOR.

25              THE COURT:  OKAY.  MR. SMITH, YOU'RE JUROR NUMBER 6;
```

1      CORRECT?

2                 JUROR:  CORRECT.

3                 THE COURT:  AND YOUR NOTE THAT SAID THAT YOU HAD

4      REACHED A VERDICT ON ALL FIVE COUNTS, IT SAID NOTE NUMBER 6.

5      WE ONLY RECEIVED NOTES 1 AND 2, SO I ASSUME YOU WERE GIVING

6      YOUR JUROR NUMBER.  CORRECT?

7                 JUROR:  I THINK THAT'S WHAT I DID.

8                 THE COURT:  THIS WAS NOTE NUMBER 3.

9           THAT'S WHAT I ASSUMED, BUT I JUST WANTED TO MAKE SURE.

10                JUROR:  SORRY.

11                THE COURT:  NOT A PROBLEM.

12          HAS THE JURY REACHED A VERDICT?

13                JUROR:  YES.

14                THE COURT:  WOULD YOU PLEASE HAND THE FORM TO THE

15     BAILIFF; AND IF YOU WOULD PLEASE HAND IT TO MS. MASON; AND,

16     MS. MASON, IF YOU WOULD PLEASE CHECK IT FOR BOTH SIGNATURE AND

17     DATE IN INK, AND THAT IT HAS BEEN FILLED OUT.  AND IF IT HAS,

18     WOULD YOU PLEASE READ IT INTO THE RECORD.

19                THE CLERK:  YES, YOUR HONOR, IT'S COMPLETE, FILLED

20     OUT, AND SIGNED BY THE FOREPERSON.

21                THE COURT:  ALL RIGHT.  IF YOU WOULD PLEASE READ IT

22     INTO THE RECORD?

23                THE CLERK:  YES, YOUR HONOR.

24          LADIES AND GENTLEMEN OF THE JURY, PLEASE LISTEN TO YOUR

25     VERDICT FOR IT WILL STAND RECORDED.

1          COUNT ONE.

2          WE, THE JURY, UNANIMOUSLY FIND DEFENDANT ROSS COLBY GUILTY

3     OF INTENTIONAL DAMAGE TO A PROTECTED COMPUTER ON OR ABOUT

4     SEPTEMBER 17, 2015, IN VIOLATION OF 18 UNITED STATES CODE,

5     SECTION 1030(A)(5)(A), AS CHARGED IN COUNT ONE OF THE

6     INDICTMENT.

7          IF YOU FOUND THE DEFENDANT GUILTY AS TO COUNT ONE, DO YOU

8     ALSO FIND BEYOND A REASONABLE DOUBT THAT THE OFFENSE CAUSED

9     LOSS TO ONE OR MORE PERSONS DURING ANY ONE-YEAR PERIOD

10    AGGREGATING AT LEAST $5,000 IN VALUE, IN VIOLATION OF

11    18 UNITED STATES CODE, SECTION 1030(C)(4)(B)(I)?

12         YES.

13         COUNT TWO.

14         WE, THE JURY, UNANIMOUSLY FIND DEFENDANT ROSS COLBY GUILTY

15    OF ATTEMPTED DAMAGE TO A PROTECTED COMPUTER ON OR ABOUT

16    SEPTEMBER 17, 2015, IN VIOLATION OF 18 UNITED STATES CODE,

17    SECTION 1030(A)(5)(A) AND (C)(4)(B)(II), AS CHARGED IN

18    COUNT TWO OF THE INDICTMENT.

19         COUNT THREE.

20         WE, THE JURY, UNANIMOUSLY FIND DEFENDANT ROSS COLBY GUILTY

21    OF INTENTIONALLY ACCESSING A PROTECTED COMPUTER WITHOUT

22    AUTHORIZATION AND OBTAINING INFORMATION ON OR ABOUT JULY 23RD,

23    2015, IN VIOLATION OF 18 UNITED STATES CODE, SECTION

24    1030(A)(2)(C), AS CHARGED IN COUNT THREE OF THE INDICTMENT.

25         COUNT FOUR.

1          WE, THE JURY, UNANIMOUSLY FIND DEFENDANT ROSS COLBY GUILTY

2     OF INTENTIONALLY ACCESSING A PROTECTED COMPUTER WITHOUT

3     AUTHORIZATION AND OBTAINING INFORMATION ON OR ABOUT JULY 24TH,

4     2015, IN VIOLATION OF 18 UNITED STATES CODE, SECTION

5     1030(A)(2)(C), AS CHARGED IN COUNT FOUR OF THE INDICTMENT.

6          COUNT FIVE.

7          WE, THE JURY, UNANIMOUSLY FIND DEFENDANT ROSS COLBY GUILTY

8     OF INTENTIONALLY ACCESSING A PROTECTED COMPUTER WITHOUT

9     AUTHORIZATION AND OBTAINING INFORMATION ON OR ABOUT JULY 25TH,

10    2015, IN VIOLATION OF 18 UNITED STATES CODE, SECTION

11    1030(A)(2)(C), AS CHARGED IN COUNT FIVE OF THE INDICTMENT.

12         YOUR HONOR, THE VERDICT FORM WAS SIGNED BY THE FOREPERSON

13    ON JUNE 6TH, 2018.

14              THE COURT:  WOULD COUNSEL WISH THE JURY TO BE POLLED?

15              MS. YOUNG:  YES, YOUR HONOR.

16              THE COURT:  ALL RIGHT.

17         JUROR NUMBER 1, MR. CHAKRABORTY, IS THE VERDICT THAT WAS

18    JUST READ INTO THE RECORD YOUR VERDICT?

19              JUROR:  YES.

20              THE COURT:  JUROR NUMBER 2, MS. VITARELLIMANOLE, IS

21    THE VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

22              JUROR:  YES.

23              THE COURT:  JUROR NUMBER 3 -- AND I'M SORRY, I'M

24    PROBABLY NOT PRONOUNCING YOUR NAME CORRECTLY -- MS. HEINISCH --

25              JUROR:  HEINISCH.

```
 1            THE COURT:  -- IS THE VERDICT THAT WAS JUST READ INTO

 2    THE RECORD YOUR VERDICT?

 3            JUROR:  YES.

 4            THE COURT:  JUROR NUMBER 4, MR. MATSUDA, IS THE

 5    VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

 6            JUROR:  YES.

 7            THE COURT:  JUROR NUMBER 5, MR. KWOK, IS THE VERDICT

 8    THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

 9            JUROR:  YES.

10            THE COURT:  JUROR NUMBER 6, MR. SMITH, IS THE VERDICT

11    THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

12            JUROR:  YES.

13            THE COURT:  JUROR NUMBER 7, MS. HARGER, IS THE

14    VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

15            JUROR:  YES.

16            THE COURT:  JUROR NUMBER 8, MS. PANDIT, IS THE

17    VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

18            JUROR:  YES.

19            THE COURT:  JUROR NUMBER 9, MS. LEDESMA, IS THE

20    VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

21            JUROR:  YES.

22            THE COURT:  JUROR NUMBER 10, MS. SOWERS, IS THE

23    VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

24            JUROR:  YES.

25            THE COURT:  JUROR NUMBER 11, MS. MILLER, IS THE
```

1    VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

2            JUROR:  YES.

3            THE COURT:  AND JUROR NUMBER 12, MS. LAUOGLE, IS THE

4    VERDICT THAT WAS JUST READ INTO THE RECORD YOUR VERDICT?

5            JUROR:  YES.

6            THE COURT:  OKAY.  I'M ORDERING THE VERDICT FORM TO

7    BE FILED.

8        LADIES AND GENTLEMEN OF THE JURY, I WANT TO THANK YOU VERY

9    MUCH FOR YOUR SERVICE IN THIS CASE.  THANK YOU FOR YOUR TIME

10   AND YOUR ATTENTION.

11       YOU ARE NO LONGER UNDER THE COURT'S ORDER NOT TO DISCUSS

12   THE CASE.  YOU ARE NOW FREE TO DISCUSS IT WITH WHOMEVER YOU

13   LIKE.

14       OFTEN THE ATTORNEYS IN A CASE FIND IT USEFUL TO TALK TO

15   THE JURORS AFTER THE CASE IS CONCLUDED TO GET THEIR

16   IMPRESSIONS.  IT IS UP TO YOU WHETHER YOU DISCUSS THE CASE WITH

17   THEM OR NOT.  YOU'RE UNDER NO OBLIGATION TO DO SO.

18       WE'LL BE THROUGH HERE IN JUST A FEW MINUTES.  IF YOU DO

19   WISH TO SPEAK WITH ANY OF THE ATTORNEYS, THEN WAIT OUTSIDE THE

20   COURTROOM AFTER WE HAVE CONCLUDED HERE AND YOU CAN MEET WITH

21   THE ATTORNEYS.

22       OTHERWISE YOU ARE DISCHARGED FROM FURTHER SERVICE IN THIS

23   CASE AND, AGAIN, I WANT TO THANK YOU FOR YOUR JURY SERVICE.

24       I'M ALSO GOING TO ASK MS. MASON IF YOU WOULD PLEASE

25   CONTACT MS. AMBRIS, OUR ALTERNATE JUROR WHO DID NOT DELIBERATE,

1    AND LET HER KNOW OF THE VERDICT AND THAT SHE IS ALSO NOW

2    DISCHARGED.

3              THE CLERK:  YES, YOUR HONOR.

4              THE COURT:  OKAY.  THANK YOU AGAIN VERY MUCH FOR YOUR

5    PATIENCE AND YOUR SERVICE.

6              THE CLERK:  I'LL TAKE THEM OUT.

7              THE COURT:  OKAY.  THANK YOU.

8         (JURY OUT AT 3:42 P.M.)

9              THE COURT:  THE RECORD SHOULD REFLECT ALL THE JURORS

10   HAVE LEFT THE COURTROOM.

11        I ACTUALLY SHOULD HAVE ASKED YOU -- PLEASE TAKE A SEAT --

12   WHETHER WE SHOULD DISCHARGE THEM.  BUT I THINK WE SHOULD

13   BECAUSE IT'S PROBABLY -- THERE'S NO WAY THE GOVERNMENT IS GOING

14   TO GET AN ANSWER TODAY ON WHETHER THAT INFORMATION IS

15   INCULPATORY OR EXCULPATORY; IS THAT CORRECT?

16             MR. SPRINGSTEEN:  I DON'T THINK WE WILL HAVE ANY

17   FURTHER INFORMATION, YOUR HONOR.

18             THE COURT:  YOU HAVE TO, WHAT, SUBPOENA THIRD

19   PARTIES?  OR WHAT'S THE NEXT STEP IN YOUR INVESTIGATION?

20             MR. SPRINGSTEEN:  SO EMBARCADERO MEDIA HAS INFORMED

21   US THAT THEY BELIEVE THEY'VE EXHAUSTED ALL AVENUES FOR

22   DETERMINING WHEN THE CHANGES WERE MADE TO THOSE ARTICLES.

23        THEY DO BELIEVE THAT THE CHANGES WERE SUBSEQUENT TO

24   NOVEMBER OF 2014, AGAIN, BECAUSE THAT'S THE LAST TIME THOSE TWO

25   ARTICLES WERE MODIFIED BY EMBARCADERO, SO PRESUMABLY THEY WERE

1     STILL ONLINE AT THAT TIME.

2          BUT APART FROM THAT, THEIR ADDITIONAL RESEARCH HAS YIELDED

3     NO RESULTS.  THEY DON'T BELIEVE THERE ARE ANY FURTHER MEANS OF

4     INQUIRY.

5          SO THE INFORMATION THAT WE HAVE AT THIS POINT MAY BE ALL

6     THAT WE HAVE.

7               THE COURT:  PLEASE TAKE A SEAT.

8          BUT IS THERE NO OTHER WAY TO -- THAT INFORMATION IS NOT

9     CACHED SOMEWHERE?

10              MR. SPRINGSTEEN:  NO.

11              THE COURT:  AND CAN'T BE --

12              MR. SPRINGSTEEN:  MY UNDERSTANDING IS IN THE

13    INTERVENING THREE YEARS, EMBARCADERO HAS CHANGED WEB HOSTS.

14    THEY NO LONGER USE PEER 1.

15         THEY DID CONTACT PEER 1 TO SEE IF THERE WERE ANY BACKUPS

16    OR ANYTHING LIKE THAT THAT MIGHT BE AVAILABLE, AND THEY WERE

17    INFORMED IN THE NEGATIVE.

18         THEY ALSO TRIED THE WAYBACK MACHINE, AN INTERNET ARCHIVING

19    SERVICE, TO --

20              THE COURT:  LET ME INTERRUPT YOU ONE SECOND.

21         SHOULD I DISCHARGE THIS JURY OR NOT?  I APOLOGIZE I DID IT

22    WITHOUT ASKING YOU.  I WASN'T SURE WHAT --

23              MR. SPRINGSTEEN:  THE GOVERNMENT BELIEVES THE JURY

24    SHOULD BE DISCHARGED.

25              THE COURT:  MS. YOUNG?

1              MS. YOUNG:  YES, YOUR HONOR, I BELIEVE THE JURY

2      SHOULD BE DISCHARGED.  IF THERE ARE ANY MOTIONS, I DON'T THINK

3      IT APPLIES TO THIS JURY.

4              THE COURT:  OKAY.  ALL RIGHT.

5          THEN -- OKAY.

6          NOW GO AHEAD, PLEASE.

7              MR. SPRINGSTEEN:  THEY TRIED PEER 1 WITHOUT SUCCESS,

8      AND THEY ALSO HAVE TRIED A PUBLICLY AVAILABLE INTERNET ARCHIVE

9      TO SEE IF THERE WERE CACHED ARTICLES, CACHED VERSIONS OF THE

10     ARTICLES AVAILABLE, AND THEY ALSO WERE NOT ABLE TO FIND ANY

11     THAT WERE MORE RECENT THAN NOVEMBER 2014, WHICH IS THE DATE

12     THAT WE ALREADY HAD.

13         SO AT THIS POINT THEY HAVE CONCLUDED THAT THEY DON'T

14     BELIEVE THERE'S ANY OTHER WAY TO BE -- TO BE CERTAIN WITH ANY

15     MORE SPECIFICITY AS TO WHEN THOSE ARTICLES WERE CHANGED AND

16     DELETED RESPECTIVELY, EXCEPT THAT IT WAS POST-NOVEMBER 2014.

17             THE COURT:  SO THE ARTICLES WERE CHANGED AND DELETED?

18             MR. SPRINGSTEEN:  ONE WAS CHANGED, ONE WAS DELETED.

19             THE COURT:  OKAY.  AND ALL YOU HAVE ARE THE DATES OF

20     PUBLICATION OF THE ORIGINAL ARTICLES?

21             MR. SPRINGSTEEN:  YES, AND THE DATES THAT THOSE

22     ORIGINAL ARTICLES WERE CHANGED BY EMBARCADERO.

23             THE COURT:  OKAY.  NOW, YOU'RE SAYING THAT CHANGE WAS

24     A CHANGE BY EMBARCADERO, OR WAS IT A CHANGE BY SOMEONE ELSE?

25             MR. SPRINGSTEEN:  IT WAS A CHANGE BY EMBARCADERO'S

```
 1        EDITORIAL STAFF.

 2              THE COURT:  OH, NOW YOU'VE GOT ME TOTALLY CONFUSED.

 3          TELL ME, THE DECEMBER 2013 PUBLICATION IN ALMANAC NEWS,

 4     WHEN WAS THAT CHANGED AND BY WHOM?

 5              MR. SPRINGSTEEN:  IT WAS CHANGED IN NOVEMBER 2014 BY

 6     ALMANAC NEWS STAFF.

 7              THE COURT:  OKAY.

 8              MR. SPRINGSTEEN:  THERE WERE TWO DECEMBER 2013

 9     ARTICLES.  THEY WERE BOTH CHANGED IN NOVEMBER OF 2014 BY

10     ALMANAC NEWS STAFF.

11          ONE OF THOSE ARTICLES, WE BELIEVE SUBSEQUENT TO NOVEMBER

12     2014, WAS DELETED IN ITS ENTIRETY FROM EMBARCADERO'S WEBSITES.

13          THE OTHER ARTICLE WAS CHANGED TO CHANGE THE NAMES OF THE

14     PRINCIPAL PEOPLE WHO WERE MENTIONED IN THE ARTICLE.

15              THE COURT:  AND IT CHANGED MR. HIRUY'S NAME?

16              MR. SPRINGSTEEN:  YES, AND THE NAMES OF THE POLICE

17     OFFICERS WHO WERE INVOLVED.

18              THE COURT:  WAS ONE OF THE OFFICERS THE SUBJECT OF

19     THE THREAT THAT WAS PART OF THE DECEMBER 2015 PROFFER?

20              MR. SPRINGSTEEN:  I BELIEVE SO.

21              MS. KNIGHT:  YES.

22              MR. SPRINGSTEEN:  YES, YOUR HONOR.

23              THE COURT:  OKAY.  SO YOU HAVE TWO ARTICLES PUBLISHED

24     ON DECEMBER -- OR IN DECEMBER OF 2013, WE DON'T HAVE AN EXACT

25     DATE, IN ALMANAC NEWS; BOTH ARTICLES GET UPDATED ON NOVEMBER --
```

1    OR IN NOVEMBER OF 2014; EMBARCADERO MEDIA IS NOT AWARE OF ANY

2    CHANGES TO THOSE TWO ARTICLES BETWEEN DECEMBER 2013 AND

3    NOVEMBER 2014; IS THAT CORRECT?

4              MR. SPRINGSTEEN:  I BELIEVE THAT'S CORRECT, YOUR

5    HONOR.

6              THE COURT:  OKAY.  BUT SUBSEQUENT TO NOVEMBER 2014,

7    ONE ARTICLE WAS DELETED AND ONE ARTICLE HAD THE NAMES OF, FOR

8    LACK OF A BETTER WORD, PARTICIPANTS OR INDIVIDUALS --

9              MR. SPRINGSTEEN:  SUBJECTS.

10             THE COURT:  -- DISCUSSED IN THE ARTICLE CHANGED?

11             MR. SPRINGSTEEN:  THAT'S CORRECT.

12             THE COURT:  AND YOU DON'T KNOW WHEN THAT OCCURRED?

13             MR. SPRINGSTEEN:  NO.  AND WE DON'T BELIEVE, BASED ON

14   WHAT WE KNOW NOW, THAT THAT DATE WILL BE ASCERTAINABLE.

15             THE COURT:  MS. YOUNG, WHAT'S YOUR POSITION ON THIS?

16             MS. YOUNG:  YOUR HONOR, IN TERMS OF WHAT I JUST

17   LEARNED AND THE COURT -- I BELIEVE THAT IF THIS INFORMATION HAD

18   COME TO MY ATTENTION IN A TIMELY FASHION, THAT IT WOULD HAVE

19   AFFECTED THE TRIAL STRATEGY IN THIS CASE.

20       THE COURT HAS REVIEWED THE PROFFER, OR THE PROFFER THAT

21   WAS GIVEN IN MAY OF 20 -- I'M MIXING UP MY YEARS.  I THINK

22   THAT'S 2016.

23       I BELIEVE WHAT IS REFLECTED IN WHAT I SEE BEFORE ME

24   CORROBORATES SOME OF THE STATEMENTS MADE BY MR. COLBY DURING

25   THE PROFFER.

1        AND IN TERMS OF EVALUATING WHETHER TO PROCEED OR PROFFER

2    AND --

3            THE COURT:  WELL, I HAVE THE PROFFER IN FRONT OF ME.

4    TELL ME WHAT YOU THINK IS IMPLICATED.

5            MS. YOUNG:  WHAT'S IMPLICATED IS THAT THESE ARTICLES

6    CORROBORATE WHAT MR. COLBY WAS TELLING THE GOVERNMENT REGARDING

7    MR. AMANUEL AND THE ACTIONS TAKEN IN LIGHT OF WHAT HE PERCEIVED

8    AS THREATS BY MR. AMANUEL, AND WE HAD NOT BEEN ABLE TO -- THE

9    GOVERNMENT HAD TRIED TO CONTACT MR. AMANUEL.  WE HAD TRIED TO

10   INVESTIGATE THAT AND HAVE NOT BEEN ABLE TO LOCATE MR. AMANUEL

11   OR FIND ANY ADDITIONAL CORROBORATION.

12       THIS INFORMATION, IN MY OPINION, GIVEN THAT IT

13   CORROBORATES SOME OF THE STATEMENTS IN THE PROFFER, WOULD

14   AFFECT MY EVALUATION OF WHETHER, IN FACT, WE WOULD HAVE

15   PROFFERED A DEFENSE -- A DEFENSE OF DURESS VERSUS THE DEFENSE

16   THAT WAS PRESENTED AT TRIAL.

17       SO I BELIEVE IT IS TO THAT EXTENT EXCULPATORY, AND I

18   BELIEVE IT WOULD BE THE SUBJECT OF A MOTION FOR NEW TRIAL, THE

19   FACT THAT IT HAS NOW BEEN DISCOVERED.

20           THE COURT:  WELL, LET ME ASK YOU A QUESTION.

21   ZEPHYR PELLERIN TESTIFIED THAT MR. COLBY TOLD HIM THAT HE HAD

22   BEEN PAID TO MODIFY THE CONTENTS OF A NEWSPAPER'S WEBSITE

23   BECAUSE IT WAS -- WHAT WAS THE REASON GIVEN?  I'D HAVE TO CHECK

24   MY NOTES.

25           SO THAT IS ALSO CONSISTENT WITH MR. AMANUEL'S -- THE WHOLE

1    THEORY ABOUT AMANUEL, AND YOU STILL DIDN'T --

2              MR. SPRINGSTEEN:  YOUR HONOR, MAY I BE HEARD?

3              THE COURT:  YEAH.

4              MR. SPRINGSTEEN:  SO TO THE EXTENT THE PROFFER

5    STATEMENTS OF THE DEFENDANT ARE CORROBORATED BY THESE ARTICLES,

6    WE BELIEVE THEY'RE ONLY CORROBORATED TO THE EXTENT THAT THEY

7    PROVIDE A MOTIVE FOR WHY THE DEFENDANT DID WHAT HE DID.

8         THE PROFFER STATEMENTS THEMSELVES SAY NOTHING ABOUT

9    ALTERING THE CONTENTS OF THE WEBSITE.  THEY GO INTO QUITE A BIT

10   OF DETAIL ABOUT THE EVENTS THAT WERE DESCRIBED IN TESTIMONY AT

11   THIS TRIAL, BUT THERE WAS NOTHING ABOUT DELETING ONE ARTICLE OR

12   ALTERING THE CONTENTS OF ANOTHER ARTICLE.

13        SO IN THAT REGARD, THEY ARE NOT CORROBORATING.

14        I GUESS I WOULD ALSO ARGUE THAT TO THE EXTENT THE

15   DEFENDANT DID, IN FACT, DELETE THIS ARTICLE AND ALTER THE OTHER

16   ONE, THAT INFORMATION WAS KNOWN TO THE DEFENDANT AND,

17   THEREFORE, SHOULD BE IMPUTED TO MS. YOUNG.  HAD SHE WANTED TO

18   PURSUE IT, SHE COULD HAVE PURSUED IT AT ANY TIME BEFORE NOW.

19        IF THE DEFENDANT'S POSITION IS THAT HE DID NOT DO IT, OR

20   IF, IN FACT, HE DID NOT DO IT, THEN IT'S MOOT WITH RESPECT TO

21   WHETHER OR NOT A DURESS DEFENSE WOULD HAVE BEEN PURSUED.

22             THE COURT:  YOU KNOW, THE GUY FAWKES PAGE SAYS,

23   "GREETINGS, THIS SITE HAS BEEN HACKED.  EMBARCADERO MEDIA

24   GROUP," AND THEN ALMANAC IN PARENTHESES, "HAS FAILED TO REMOVE

25   CONTENT THAT HAS BEEN HARMFUL TO THE WELLBEING AND SAFETY OF

1      OTHERS.  FAILURE TO HONOR ALL REQUESTS TO REMOVE CONTENT WILL

2      LEAD TO THE PERMANENT SHUT DOWN OF ALL EMBARCADERO MEDIA GROUP

3      WEBSITES."

4           SO THIS WAS PUT ON THE EMBARCADERO MEDIA WEBSITES ON

5      SEPTEMBER 17TH OF 2015, AND BY THE CONTENTS, IT SAYS

6      "EMBARCADERO HAS FAILED TO REMOVE CONTENT THAT HAS BEEN HARMFUL

7      TO THE WELLBEING AND SAFETY OF OTHERS."

8           SO IT IMPLIES THAT -- I MEAN, I HAVE TO -- I HAVE TO AGREE

9      WITH THE GOVERNMENT, I THINK IT COULD BE HIGHLY INCULPATORY OF

10     MR. COLBY.  I MEAN, HE'S ALREADY CONFESSED TO ACCESSING THE

11     COMPANY'S WEB SERVER, HE'S ALREADY CONFESSED IN HIS PROFFER --

12     I'M JUST READING SOME OF IT.

13          YOU KNOW, "DESPITE COLBY'S DISRUPTION OF THE EMBARCADERO

14     WEBSITES, AMANUEL WANTED EMBARCADERO'S WEBSITE TO BE TAKEN DOWN

15     EVEN FURTHER.  AMANUEL CLAIMED HE HAD A FOREIGN BUSINESS DEAL

16     THAT WAS DEPENDENT ON EMBARCADERO'S WEBSITE BEING SHUT DOWN.

17     IN RESPONSE TO THIS REQUEST, COLBY TOOK EMBARCADERO'S SITE DOWN

18     COMPLETELY AND REPLACED IT WITH THE IMAGE OF AN ANONYMOUS LOGO

19     HE HAD PULLED FROM GOOGLE IMAGES.  IN ADDITION, COLBY ADDED A

20     CAPTION BENEATH THE LOGO THAT WAS DIRECTED TO BILL JOHNSON, THE

21     PRESIDENT AND CHIEF EXECUTIVE OFFICER (CEO) OF

22     EMBARCADERO MEDIA.  FURTHERMORE, COLBY ADVISED THAT THE USE OF

23     THE ANONYMOUS LOGO AND CAPTION WERE PUT UP AS A DECOY.

24          "COLBY ADVISED THAT THROUGHOUT THE COMPROMISE, ALL THE

25     CHANGES HE MADE WERE REVERSIBLE.

1    "COLBY SUGGESTED THAT EMBARCADERO DISABLE THEIR GUEST

2    ACCOUNT FOR THE CONTENT MANAGEMENT SYSTEM IN ORDER TO MITIGATE

3    THE RISK OF A SIMILAR ATTACK HAPPENING AGAIN."

4         I GUESS I'M UNCLEAR ON HOW THIS IS EXCULPATORY.

5              MS. YOUNG:  YOUR HONOR -- YOUR HONOR, MY POSITION IS

6    THAT IT CORROBORATES THE EXPLANATION MR. COLBY GAVE TO THE

7    GOVERNMENT AT THE TIME OF THE PROFFER, AND THAT PRESENTATION

8    OF -- PRESENTATION AT TRIAL INCORPORATING DOCUMENTS THAT

9    CORROBORATE WHAT -- OR WHAT MR. COLBY SAID HE WAS DIRECTED TO

10   DO I WOULD SUBMIT IS HELPFUL IN THAT IT SHOWS WHAT HAPPENED.

11        I APPRECIATE THE COURT -- SINCE, IN FACT, THE PROFFER

12   ITSELF INCLUDED ADMISSIONS AND IT INCORPORATES THOSE

13   ADMISSIONS, I THINK IT NEEDS TO BE PUT IN THE LIGHT OF THOSE

14   ADMISSIONS WERE MADE IN THE CONTEXT OF THE FACT THAT MR. COLBY

15   BELIEVED HE ACTED UNDER DURESS BECAUSE OF THE THREATS FROM

16   MR. AMANUEL.

17        SO A DURESS DEFENSE SORT OF INCORPORATES ACKNOWLEDGING THE

18   ACTS, BUT EXPLAINING THERE WERE ACTIONS UNDER DURESS.

19             MR. SPRINGSTEEN:  YOUR HONOR, TO THE EXTENT MR. COLBY

20   WAS UNDER ANY IMPULSE RELATED TO MR. AMANUEL, THERE'S NO WAY

21    THE DEFENSE WOULD BE ABLE TO SHOW IMMEDIACY.

22        THE CONDUCT OF WHICH THE DEFENDANT WAS JUST CONVICTED TOOK

23   PLACE OVER A SPAN OF MONTHS, AND SO EVEN IF THE COURT SHOULD

24   FIND THAT THIS SOMEHOW, SOME WAY -- AGAIN, OUR MAIN POSITION IS

25   THE DEFENSE HAD ALL THE FACTS AVAILABLE TO IT THAT IT NEEDED IN

1      ORDER TO DECIDE WHETHER OR NOT TO PRESENT A DURESS DEFENSE.

2      THESE DOCUMENTS WOULD NOT HAVE ADDED TO THAT EQUATION AT ALL.

3           BUT TO THE EXTENT THAT THEY MAY HAVE PUT ON A DURESS

4      DEFENSE, THEY WOULD NOT HAVE BEEN ABLE TO SHOW THE IMMEDIACY

5      PRONG IN ORDER TO SUCCESSFULLY GET OVER THAT BAR.

6           THE COURT:  YOU KNOW, I WILL SAY, UNDER UNITED STATES

7      VERSUS VASQUEZ-LANDAVER, 527 F.3D 798 AT 802, NINTH CIRCUIT,

8      2008, "TO PRESENT A DURESS DEFENSE, THE DEFENDANT MUST MAKE A

9      PRIMA FACIE SHOWING IN AN OFFER OF PROOF OF THE THREE ELEMENTS:

10     AN IMMEDIATE THREAT OF DEATH OR SERIOUS BODILY INJURY; A WELL

11     GROUNDED FEAR THAT THE THREAT WILL BE CARRIED OUT; AND A LACK

12     OF REASONABLE OPPORTUNITY TO ESCAPE THE THREATENED HARM."

13          AND EVEN YOU YOURSELF, DURING YOUR CLOSING, SAID THAT

14     WHOEVER COMMITTED THIS CRIME TOOK SIX WEEKS OFF -- IT DIDN'T

15     LOOK LIKE A FULL SIX WEEKS, BUT MS. KNIGHT CONCEDED IT WAS SIX

16     WEEKS IN HER REBUTTAL -- BETWEEN WHEN THEY DID THE LAST HACK, I

17     BELIEVE THERE WAS ONE ON AUGUST 9TH, AND THEN AGAIN NOBODY

18     SEEMED TO BE COUNTING THE ONE ON AUGUST 19TH, AND THEN THE NEXT

19     ACTION ISN'T UNTIL SEPTEMBER 10TH.

20          SO I DON'T KNOW HOW YOU WERE CALCULATING SIX WEEKS.  YOU

21     KEPT SAYING SIX WEEKS IN YOUR CLOSING.  I DON'T KNOW, WERE YOU

22     SAYING SIX WEEKS BETWEEN AUGUST 8TH AND SEPTEMBER 10TH?

23          MS. YOUNG:  I MAY HAVE COUNTED THE SIX WEEKS FROM THE

24     DATE OF THE CHARGED COUNT, BUT THAT --

25          THE COURT:  OH, I SEE.  I SEE.

```
 1              MS. YOUNG:  SO THAT'S CLOSER TO SIX WEEKS.

 2              THE COURT:  I SEE.  BECAUSE THERE WAS CERTAINLY

 3    ACTIVITY, THERE WAS ONE E-MAIL -- WELL, ONE ACCESSING OF THE

 4    PLANESSI, BRAVO, AND TORRES CORPORATE ACCOUNTS ON AUGUST 19TH.

 5              OH, YOU'RE SAYING, OKAY, THE CHARGED COUNTS BEING

 6    JULY 23RD, 24TH AND 25TH, AND THEN SEPTEMBER 17TH, IS THAT HOW

 7    YOU WERE COUNTING SIX WEEKS?

 8              MS. YOUNG:  CORRECT, YES, YOUR HONOR, I BELIEVE SO.

 9              THE COURT:  ACTUALLY, THAT'S ACTUALLY EIGHT WEEKS.

10         BUT CLEARLY THERE WAS A LONG PERIOD OF LITTLE ACTIVITY.

11    THE PIA VPN ACTIVITY, IT LOOKS LIKE IT ENDED ON AUGUST 10TH.

12         THEN ON AUGUST 19TH, YOU HAVE THE ACCESSING OF THE

13    CORPORATE E-MAIL ACCOUNTS OF THE THREE I.T. PERSONNEL AT

14    EMBARCADERO MEDIA, AND THEN YOU DON'T HAVE THAT PIA VPN

15    ACTIVITY AGAIN UNTIL SEPTEMBER 10TH.

16         SO AT A MINIMUM, THREE WEEKS ELAPSED.

17         SO I WOULD HAVE TO AGREE WITH MR. SPRINGSTEEN, I DON'T

18    KNOW HOW YOU SHOW IMMEDIATE THREAT OF DEATH OR SERIOUS BODILY

19    INJURY --

20              MS. YOUNG:  YOUR HONOR?

21              THE COURT:  UM-HUM.  -- WHEN THERE'S THAT MUCH LAG

22    TIME IN BETWEEN ALL THE ACTIVITIES.

23              MS. YOUNG:  MAY I RESPOND, YOUR HONOR?

24              THE COURT:  YES.

25              MS. YOUNG:  THE -- AS I RECALL, THE INFORMATION IN
```

```
 1        THE PROFFER IS THERE WAS A FIRST CONTACT BY MR. AMANUEL

 2    REGARDING EMBARCADERO MEDIA, AND THEN THERE WERE NEW CONTACTS

 3    AND NEW PERCEPTIONS OF DANGER APPROXIMATELY A MONTH LATER,

 4    WHICH THEN WOULD GO TO THE SECOND AREA OF INTRUSIONS.

 5        SO I -- THERE IS, IN THE PROFFER, INDICATION THAT THERE

 6    WERE -- THERE WAS ACTIVITY BY MR. AMANUEL ON TWO DIFFERENT SETS

 7    OF OCCASIONS THAT CAUSED HIM TO BELIEVE THAT HE AND OTHERS WERE

 8    IN DANGER.

 9            MR. SPRINGSTEEN:  YOUR HONOR, THE PROFFER ALSO SAID

10    THE DEFENDANT SAID THAT HE WAS DOING THIS, THAT HE DID IT TO

11    PAY OFF THE DEBT OF A FRIEND.

12            MS. YOUNG:  AND THE -- BECAUSE THE SAFETY OF HIMSELF

13    AND HIS FRIEND WAS DUE TO THE DEBT THAT MR. AMANUEL SAID HE WAS

14    OWED.

15            THE COURT:  THERE ARE NO DATES FROM WHAT I CAN SEE IN

16    HERE.  IT JUST SAYS, WELL, HE WAS LIVING IN THE 458 SOUTH

17    VAN NESS AVENUE ADDRESS.

18        BUT IT SAYS THAT HE LEARNED ABOUT THE ROCKETS AND THE

19    PROPELLED GRENADES AND ROCKET LAUNCHERS IN THAT FIRST MEETING.

20        BUT YOU'RE SAYING THAT WASN'T WHAT WAS THREATENING HIM, IT

21    WAS SOMETHING THAT HE LEARNED ABOUT IN HIS LATER MEETING?

22        BECAUSE THAT SEEMS INCONSISTENT WITH WHAT WAS SOMEWHAT

23    REPRESENTED BEFORE, THAT IT -- WHEN MR. COLBY TESTIFIED AT THE

24    EVIDENTIARY HEARING ON MAY 2ND OF 2018 THAT IT WAS -- THE FEAR

25    WAS THESE ROCKET PROPELLED GRENADES AND ROCKET LAUNCHERS AND HE
```

1    LEARNED ABOUT THAT AT THE INITIAL MEETING.

2         BUT YOU'RE SAYING THE INITIAL MEETING WAS NOT THE THREAT?

3              MS. YOUNG:  IT -- IT STARTED WITH THE MEETINGS.  IT

4    STARTED WITH CONDUCT REGARDING THE ROCKET PROPELLED GRENADES

5    DURING SOMETIME EARLY IN THE SUMMER, AND HE BELIEVED THAT THE

6    DANGER CONTINUED THROUGHOUT THE SUMMER.

7         MR. AMANUEL HAD ACCESS TO THESE -- TO ALL THIS EQUIPMENT

8    AND THREATENED HIM, AND HE BELIEVED THAT HE AND OTHERS WERE IN

9    DANGER FROM MR. AMANUEL.

10             MR. SPRINGSTEEN:  AGAIN, YOUR HONOR, ALL THIS

11   INFORMATION WAS KNOWN TO THE DEFENSE.

12             MS. YOUNG:  YOUR HONOR, WE ARE AWARE OF WHAT

13   MR. COLBY SAID.

14        WHAT WE WEREN'T AND DIDN'T HAVE ACCESS TO WAS WHAT CHANGES

15   WOULD OR WOULD NOT HAVE BEEN MADE -- I DID TRY LOOKING ONLINE

16   FOR THE ARTICLES REGARDING MR. AMANUEL.

17             THE COURT:  WHY DIDN'T THE FBI LOOK INTO THIS?  I'M

18   LOOKING AT THE PROFFER FROM THE MAY 17, 2016 PROFFER SESSION.

19   IT SAYS, "HOWEVER, AMANUEL TOLD COLBY THAT HE COULD HELP ALEX

20   REPAY HIS DEBT BY REMOVING AN ARTICLE FROM EMBARCADERO MEDIA'S

21   WEBSITE.  WHEN COLBY ASKED WHAT AMANUEL WANTED, AMANUEL ASKED

22   COLBY TO HACK EMBARCADERO'S SERVERS AND CHANGE AN ARTICLE THAT

23   WAS NEGATIVELY WRITTEN ABOUT AMANUEL.  FURTHERMORE, AMANUEL

24   ALSO TOLD COLBY THAT HE WANTED THIS ARTICLE TO BE REMOVED FROM

25   GOOGLE'S SEARCH RESULTS.  OUT OF FEAR, COLBY TOOK STEPS TO

1       REMOVE THE ARTICLE FROM GOOGLE.

2            "TO CARRY OUT AMANUEL'S REQUEST, COLBY FIRST WENT TO

3       GOOGLE TO SEARCH FOR THE FOLLOWING TERM:

4       'SITE:EMBARCADEROMEDIA.COM.'  ACCORDING TO COLBY, THE SEARCH

5       RESULTS SHOWED ALL THE SUB DOMAINS FOR EMBARCADERO MEDIA, TO

6       INCLUDE A LOGIN PORTAL FOR EMBARCADERO'S CONTENT MANAGEMENT

7       SYSTEM NAMED 'DCL.'  BY USING GUEST CREDENTIALS FOR DCL WHICH

8       WERE ACTIVATED BY DEFAULT, COLBY WAS ABLE TO LOG INTO

9       EMBARCADERO MEDIA'S CONTENT MANAGEMENT SYSTEM AND SEE SUPPORT

10      TICKETS FOR THE COMPANY WHICH CONTAINED PASSWORDS IN CLEAR

11      TEXT.

12           "BY LOOKING FURTHER THROUGH THE COMPANY'S CONTENT

13      MANAGEMENT SYSTEM, COLBY CAME ACROSS AN ACCOUNT FOR

14      FRANK BRAVO, AN ADMINISTRATOR FOR THE COMPANY AND OWNER OF

15      EMBARCADERO MEDIA'S DOMAINS.  UPON FURTHER REVIEW, COLBY

16      OBSERVED A CORRESPONDENCE BETWEEN BRAVO AND ANOTHER

17      EMBARCADERO MEDIA EMPLOYEE IN WHICH THE PASSWORD," AND THEN

18      IT'S LISTED, "WAS PROVIDED IN PLAIN TEXT.  BY USING THIS

19      PASSWORD, COLBY WAS ABLE TO GAIN ACCESS TO COMPANY E-MAIL AND

20      OTHER RESOURCES."

21           AND IT GOES ON.

22           NOW, I GUESS I'M -- I'M NOT SURE HOW EVIDENCE OF FURTHER

23      COMPUTER INTRUSIONS AND FURTHER INTENTIONAL DAMAGE TO A

24      PROTECTED COMPUTER, WHICH COULD BE ADDITIONAL FELONY COUNTS

25      AGAINST MR. COLBY, IS EXCULPATORY.

```
 1              MS. YOUNG:  YOUR HONOR --

 2              THE COURT:  THOSE WOULD ALL BE ADDITIONAL FELONY

 3   COUNTS.

 4         HAS THE STATUTE RUN?

 5              MS. KNIGHT:  I DON'T BELIEVE IT HAS, YOUR HONOR.  AND

 6   I --

 7              THE COURT:  HE CAN BE CHARGED WITH THOSE COUNTS AS

 8   WELL.  IF YOU DO A NEW TRIAL, WHY WOULDN'T THAT BE -- YOU COULD

 9   SUPERSEDE THE INDICTMENT WITH ADDITIONAL FELONY COUNTS.

10              MR. SPRINGSTEEN:  I THINK, HAD WE BEEN AWARE OF THIS,

11   WE VERY WELL MAY HAVE.

12              THE COURT:  ANYWAY, WHAT'S THE PROPER WAY -- I DON'T

13   KNOW IF THERE'S ANYTHING FURTHER THAT COULD BE DONE -- I THINK

14   IT'S A LITTLE BIT SUSPECT THAT THE GOVERNMENT CAME IN HERE

15   EARLIER SAYING "WE'RE STILL TRYING TO DRILL THIS DOWN."

16         WHEN I REVEALED THAT THEN THIS WOULD CAUSE POTENTIALLY A

17   MISTRIAL OR A NEW TRIAL OR DOUBLE JEOPARDY, WHICH WOULD ALLOW

18   NO CONVICTION OF MR. COLBY, THEN SUDDENLY EMBARCADERO MEDIA IS

19   COMING BACK AND SAYING, "OH, NO.  WE'VE FORECLOSED EVERY

20   OPTION.  THERE'S NO FURTHER WAY TO FIND THIS OUT.  YOU HAVE ALL

21   THE INFORMATION YOU NEED."

22         I JUST FIND THAT VERY SUSPECT BECAUSE WHEN YOU CAME HERE

23   EARLIER, YOU SAID "WE'RE STILL LOOKING INTO THIS.  WE DON'T

24   HAVE AN ANSWER.  WE MIGHT HAVE FURTHER INFORMATION."

25              AND THEN YOU ALL WALKED OUT WITH ALL THOSE
```

1    EMBARCADERO MEDIA PEOPLE, AND THEN YOU COME BACK SAYING, "NOPE,

2    EVERY AVENUE IS FORECLOSED."

3         I FIND THAT VERY SUSPICIOUS.  HOW CONVENIENT AND

4    SELF-SERVING IS THAT?

5              MR. SPRINGSTEEN:  I'M HAPPY TO MAKE REPRESENTATIONS

6    TO THE COURT REGARDING THAT, YOUR HONOR.

7         WHEN WE LEFT THE COURTROOM EARLIER -- I GUESS IT WAS

8    AROUND 2:15 OR 2:20 P.M. -- WE IMMEDIATELY WENT DOWNSTAIRS TO

9    OUR OFFICE ANNEX ON THE SECOND FLOOR AND WE HAD A CONFERENCE

10   CALL WITH BILL JOHNSON, WHO'S HERE IN PERSON, AND WITH

11   CHRIS PLANESSI AT EMBARCADERO.

12        AT THAT TIME, MR. PLANESSI NOTIFIED US OF THE INFORMATION

13   WHICH I RELAYED TO THE COURT EARLIER.

14        WE THEN INSTRUCTED AGENT FRAZIER TO RETURN TO THE OFFICE

15   TO WRITE UP A 302 REGARDING THIS INFORMATION, AND AS SOON AS

16   THAT HAD BEEN PREPARED, WE WERE GOING TO PROVIDE IT TO THE

17   DEFENSE AND TO THE COURT.

18             THE COURT:  THAT DOESN'T ANSWER MY QUESTION.  WHEN

19   MS. KNIGHT WAS IN HERE REPRESENTING WHAT SHE KNEW, SHE MADE IT

20   SOUND LIKE IT WAS NOT RESOLVED, THAT YOU WOULD HAVE MORE

21   INFORMATION.

22             MR. SPRINGSTEEN:  WELL --

23             THE COURT:  OKAY?  THEN YOU WALK OUT WITH ALL THESE

24   EMBARCADERO MEDIA PEOPLE AND YOU COME BACK IN AND SAY, "NOPE,

25   EVERY AVENUE IS FORECLOSED.  THIS IS IT.  THIS IS AS MUCH

1   INFORMATION AS WE'RE GOING TO GET.  THERE'S NO THIRD PARTY,

2   THERE'S NO OTHER WAY TO GET ANY FURTHER INFORMATION.

3   THEREFORE, CASE CLOSED."

4       I JUST FIND THAT VERY SUSPICIOUS AFTER THEY REALIZED,

5   "UH-OH, THIS IS GOING TO CAUSE DOUBLE JEOPARDY AND PERHAPS

6   VACATE THIS CONVICTION."

7           MR. SPRINGSTEEN:  YOUR HONOR, OF COURSE WE KNEW THAT

8   WHEN WE DISCLOSED IT EARLIER.

9           THE COURT:  BUT I DON'T THINK EMBARCADERO MEDIA

10  PROBABLY KNEW THAT.  THEY PROBABLY THOUGHT THEY WERE HELPING

11  YOU BY GIVING YOU MORE RESEARCH.

12          MR. SPRINGSTEEN:  THAT -- AS TO THEIR MOTIVES, I

13  CANNOT SPEAK.

14      ALL I CAN SAY IS SUBSEQUENT TO MS. KNIGHT'S

15  REPRESENTATIONS EARLIER, WE LEFT THE COURTROOM, WE RECEIVED

16  THAT ADDITIONAL INFORMATION FROM EMBARCADERO WHICH I JUST

17  PROFFERED.

18          THE COURT:  WHY DIDN'T THAT COME OUT IN YOUR

19  CONVERSATION WITH MR. PLANESSI THIS MORNING?  WHAT IS THE AGENT

20  WRITING UP IN THE 302?  YOU DIDN'T EVEN ASK THAT QUESTION?

21          MR. SPRINGSTEEN:  WE DIDN'T SPEAK TO MR. PLANESSI

22  THIS MORNING.  WE ONLY SPOKE TO BILL JOHNSON.

23      AND FROM WHEN WE LEARNED ABOUT IT THIS MORNING, OUR FIRST

24  CALL WAS TO THE FBI TO ASK THEM TO FIND AND INTERVIEW

25  MR. JOHNSON AND, TO THE EXTENT NECESSARY, OTHER MEMBERS OF

1    EMBARCADERO'S STAFF IN ORDER TO ASCERTAIN WHAT WAS KNOWN, WHAT

2    WAS NOT KNOWN, WHAT WAS SUSPECTED, WHAT COULD BE CONFIRMED.

3         AND AS SOON AS WE BELIEVED WE HAD SOME HANDLE ON THAT,

4    THAT WAS WHEN I E-MAILED MS. MASON AND ASKED HER --

5              THE COURT:  WHEN DID YOU GET THE INFORMATION THAT ALL

6    AVENUES WERE FORECLOSED BY EMBARCADERO MEDIA?

7              MR. SPRINGSTEEN:  AFTER COURT --

8              THE COURT:  THAT IS NOT WHAT WAS REPRESENTED TO ME.

9              MR. SPRINGSTEEN:  AFTER COURT EARLIER THIS AFTERNOON.

10             THE COURT:  RIGHT.  I JUST FIND THAT HIGHLY SUSPECT.

11   NO ONE ASKED THEM, "WHAT MORE RESEARCH CAN BE DONE?  WHAT MORE

12   INFORMATION IS THERE?"

13        I MEAN, YOU ALL LEFT THE COURTROOM AS IF, "THIS IS NOT

14   RESOLVED.  WE'RE STILL LOOKING INTO IT.  WE HOPE TO HAVE

15   FURTHER INFORMATION.  WE DON'T KNOW WHEN."

16             MR. SPRINGSTEEN:  THAT'S CORRECT, YOUR HONOR.

17        BUT ALL I CAN SAY IS WE IMMEDIATELY WENT DOWNSTAIRS, GOT

18   ON THE PHONE WITH MR. PLANESSI, WHO WAS NOT PRESENT IN COURT

19   FOR THE EARLIER HEARING, HE WAS BACK AT THEIR, PRESUMABLY THEIR

20   OFFICE DOING THIS RESEARCH, AND HE TOLD US AT THAT TIME WHAT HE

21   HAD FOUND.

22        WE ALSO ASKED AGENT FRAZIER IF HE COULD -- IF HE HAD ANY

23   OTHER INVESTIGATIVE LEADS HE THOUGHT HE WOULD BE ABLE TO

24   PURSUE, AND AT THAT TIME HE DID NOT BELIEVE THAT THERE WERE ANY

25   ADDITIONAL LEADS.

```
 1                    THE COURT:  ALL RIGHT.

 2           LET ME HEAR FROM MS. YOUNG.  HOW DO YOU WANT TO PROCEED ON

 3      THIS?

 4                    MS. YOUNG:  YOUR HONOR, I WOULD REQUEST THAT I BE

 5      GIVEN SOME TIME TO REFLECT OVER WHAT HAS DEVELOPED AND

 6      DETERMINE WHETHER EITHER A MOTION -- I DON'T KNOW IF YOU CAN

 7      HAVE A MISTRIAL AFTER A VERDICT, OR WOULD IT BE A MOTION FOR

 8      NEW TRIAL?

 9           ANYWAY, TO DETERMINE WHETHER -- WHAT OPTIONS THERE ARE AND

10      WHETHER WE WOULD CHOOSE TO PURSUE THOSE, AND I WOULD NEED SOME

11      TIME TO DO IT.

12                    THE COURT:  AND I WANT ALL OF THIS WRITTEN UP.  WHEN

13      DID EMBARCADERO MEDIA START SEARCHING FOR THIS?  LAST NIGHT?

14                    MR. SPRINGSTEEN:  UM --

15                    THE COURT:  WHEN DID THEY CHECK WITH ALL OF THESE

16      THIRD PARTIES?

17                    MR. SPRINGSTEEN:  I BELIEVE THAT WAS --

18                    THE COURT:  THEY MUST HAVE BEEN SEARCHING FOR THIS

19      FOR A WHILE.  THEY DIDN'T GET ANSWERS FROM I.T. MEDIA LAST

20      NIGHT, DID THEY?

21                    MR. SPRINGSTEEN:  I BELIEVE SO, YOUR HONOR.  BUT I

22      DON'T KNOW THE ANSWER TO THAT.

23           I COULD ASK MR. JOHNSON, WHO'S PRESENT IN COURT.

24                    MS. YOUNG:  PERHAPS WE SHOULD -- I MEAN, IT'S FINE

25      FOR US TO FIND OUT WHAT WE CAN AT THIS POINT.  I WILL NEED ALL
```

1       OF THESE OBVIOUSLY IN REPORTS.

2               THE COURT:  DO YOU WANT TO GET TESTIMONY TODAY?

3       LET'S SWEAR HIM IN.

4               MS. YOUNG:  YOUR HONOR, I -- I'M NOT REQUESTING THAT

5       HE BE -- THAT WE TAKE HIS TESTIMONY TODAY.

6           I'M INDICATING THAT GETTING THE REPORTS THAT THE

7       GOVERNMENT SAID THEY WERE IN THE PROCESS OF PREPARING AND

8       GETTING A TIMELINE OF WHAT WAS KNOWN AND WHEN WOULD BE HELPFUL,

9       BECAUSE WE'RE DOING ALL OF THIS AS IT HAPPENS.

10              THE COURT:  OKAY.  ALL RIGHT.  SO WHEN ARE WE GOING

11      TO GET THE 302'S ON ALL OF THIS?

12              MR. SPRINGSTEEN:  I HOPE THIS EVENING, YOUR HONOR,

13      BUT I THINK MORE REALISTICALLY TOMORROW MORNING JUST BECAUSE

14      BEFORE AGENT FRAZIER CAN ISSUE A 302, IT HAS TO BE APPROVED BY

15      A SUPERVISOR, AND I DON'T KNOW THEIR AVAILABILITY.  I KNOW

16      AGENT FRAZIER IS WORKING ON IT RIGHT NOW.

17              THE COURT:  SO A MOTION FOR JUDGMENT OF ACQUITTAL IS

18      NORMALLY DUE 14 DAYS AFTER A GUILTY VERDICT, OR AFTER THE COURT

19      DISCHARGES THE JURY, WHICHEVER IS LATER, BUT IN THIS INSTANCE,

20      IT'S THE SAME DAY, SO IT WOULD BE DUE 14 DAYS FROM TODAY.

21          DO YOU WANT TO WORK ON A BRIEFING SCHEDULE?  WE'RE GOING

22      TO HAVE TO DO POST-TRIAL MOTIONS ON WHETHER WE NEED TO HAVE A

23      NEW TRIAL, WHETHER WE NEED TO HAVE A JUDGMENT OF ACQUITTAL,

24      WHATEVER.  I DON'T KNOW WHATEVER RELIEF IS GOING TO BE SOUGHT.

25              OR MAYBE IT'S NOT GOING TO BE SOUGHT.  I MEAN, I ALSO

 1    COULD SEE THAT THIS COULD BE -- WE MAY HAVE TO RE-DO THIS

 2    AGAIN.  THERE COULD BE A SUPERSEDING INDICTMENT WITH ADDITIONAL

 3    FELONY COUNTS POTENTIALLY, ALTHOUGH IF YOU HAVE NO EVIDENCE, IT

 4    WOULD BE A VERY WEAK CASE.  IT WOULD BE AN EXTREMELY WEAK CASE.

 5         SO WHAT DO YOU WANT IN TERMS OF -- LET'S SET A BRIEFING

 6    SCHEDULE FOR POST-TRIAL MOTIONS THEN.  I WAS HOPING NOT TO HAVE

 7    TO DO THIS, BUT IT IS WHAT IT IS.

 8              MS. YOUNG:  I KNOW THAT THE RULE CALLS FOR THE

 9    INITIAL MOTION ON OUR PART THEN TO BE FILED WITHIN 14 DAYS.

10              THE COURT:  THAT'S CORRECT.  I'M READING RULE 29(C)1.

11              MS. YOUNG:  SO I'M ALSO -- I BELIEVE IT'S IN

12    RULE 29 -- AT TIMES I KNOW THAT PEOPLE HAVE REQUESTED THAT THE

13    FILING OF THAT MOTION BE EXTENDED, BUT I THINK IN THIS

14    INSTANCE, GIVEN THAT I BELIEVE I WILL HAVE THE 302'S BY THE END

15    OF THE WEEK, NO LATER THAN THE END OF THE WEEK, THAT WOULD MAKE

16    THE FILING DATE THE 20TH.

17         JUST -- COULD I GET AN EXTENSION UNTIL THE 22ND AND WORK

18    BRIEFING STARTING FROM -- IF I FILE SOMETHING, I'M GOING TO

19    FILE SOMETHING BY JUNE 22ND.

20              THE COURT:  OKAY.

21              MS. YOUNG:  AND WE GO FROM THERE IN TERMS OF SETTING

22    A SCHEDULE?

23              THE COURT:  OKAY.  LET'S GO BACK HERE.

24         SO THE FBI 302'S ARE GOING TO BE PRODUCED TOMORROW YOU

25    SAID?

1          MR. SPRINGSTEEN:  AT THE EARLIEST POSSIBILITY, YOUR

2    HONOR.  I WOULD IMAGINE NO LATER THAN TOMORROW.

3          THE COURT:  OKAY.  JUNE 7TH.  AND I WANT EVERYTHING.

4    WHEN DID THEY START LOOKING?  WHAT DID THEY FIND?  WHO HAVE

5    THEY CONSULTED?  WHAT THIRD PARTY HAVE THEY CONSULTED?  WHAT

6    OTHER THIRD PARTIES EXIST THAT COULD DRILL DOWN ON THIS AND

7    PROVIDE INFORMATION ABOUT WHEN THESE CHANGES WERE MADE OR THIS

8    DELETION WAS MADE?

9          MR. SPRINGSTEEN:  WE'LL MAKE THIS AS DETAILED AS

10   POSSIBLE.

11         THE COURT:  WHY DIDN'T THE FBI INVESTIGATE THIS?

12   THEY WERE ON NOTICE OF THIS SINCE THE DECEMBER 15TH PHONE CALL

13   OF 2015.

14       AND AT THIS PROFFER SESSION ON MAY 17, 2015, HE DISCLOSES,

15   MR. COLBY DOES, MR. AMANUEL ASKED HIM TO MAKE THOSE CHANGES TO

16   ARTICLES THAT WERE HARMFUL TO HIM.

17       WHY WASN'T THIS DONE TWO YEARS AGO?  IT'S IN THE PROFFER

18   SESSION.

19       ALL RIGHT.  WELL, IF THE MOTION FOR NEW TRIAL OR MOTION

20   FOR JUDGMENT OF ACQUITTAL FOR ME TO SET ASIDE THE VERDICT AND

21   ENTER AN ACQUITTAL IS DUE ON JUNE 22ND, WHEN IS THE GOVERNMENT

22   GOING TO FILE ITS RESPONSE?

23         MR. SPRINGSTEEN:  YOUR HONOR, MAY WE HAVE TWO WEEKS

24   AS WELL FROM JUNE 22ND?

25         THE COURT:  THAT'S FINE.  THAT'S JULY 6TH.

1          THEN FILE YOUR REPLY ON JULY 13TH.  OKAY?

2              MS. YOUNG:  THAT'S FINE.

3              THE COURT:  OKAY.  THEN LET ME GET A HEARING DATE.

4      WE HAVE SUCH A FULL -- SUCH A FULL CRIMINAL CALENDAR, NOW I'M

5      GOING TO ADD THIS.

6          ALL RIGHT.  WELL, THE 18TH I HAVE A SUPPRESSION MOTION AND

7      I HAVE TWO SENTENCINGS, SO THAT'S NOT GOING TO WORK.

8          WEDNESDAY, THE 25TH, I HAVE DR. GANESH'S SENTENCING, SO

9      THAT'S NOT GOING TO WORK.

10          ON THE 8TH I HAVE ANOTHER MOTION TO SUPPRESS -- I HAVE TWO

11      MOTIONS TO SUPPRESS AND I HAVE A SENTENCING ON THE 8TH.

12          ON THE 15TH I HAVE A SENTENCING IN A DEATH PENALTY CASE

13      AND I HAVE A PRETRIAL CONFERENCE.

14          I DON'T KNOW.  THE 22ND, I HAVE A PRETRIAL CONFERENCE AND

15      ANOTHER SENTENCING.

16          LET ME ASK MS. MASON, WHEN DO YOU THINK WORKS?  NONE OF

17      THESE DATES LOOK GREAT.  AUGUST 29TH I HAVE ALL OF THE DAUBERT

18      MOTIONS IN THE DEATH PENALTY CASE WITH SIX DEFENDANTS.

19              THE CLERK:  NONE OF THE DATES LOOK GOOD, YOUR HONOR.

20      IF WE HAD TO PICK ONE, I WOULD SAY AUGUST 22ND.  I BELIEVE THE

21      SEALED SENTENCING HOPEFULLY SHOULDN'T BE TERRIBLY INVOLVED.

22              MS. YOUNG:  YOUR HONOR, IF THE HEARING DATE IS GOING

23      TO BE TOWARDS THE END OF AUGUST, WOULD IT BE POSSIBLE TO PUSH

24      OUR DATES BACK TO GIVE US --

25              THE COURT:  WHAT ABOUT THE 15TH?

```
 1              MS. YOUNG:  -- ANOTHER WEEK?

 2              THE COURT:  WHAT ABOUT AUGUST 15TH?

 3              THE CLERK:  YOUR HONOR, I BELIEVE YOU SET A

 4    SENTENCING THIS MORNING ON THE 15TH AS WELL, SO YOU HAVE TWO

 5    SENTENCINGS.

 6              THE COURT:  OH.

 7              THE CLERK:  TWO SENTENCING MATTERS.

 8              THE COURT:  WHICH ONE WAS THAT?

 9              THE CLERK:  MARY MAPA WAS SET FOR THE 15TH, ALONG

10    WITH THE WOLFENBARGER PRETRIAL CONFERENCE, SO I'M NOT SURE IF

11    YOU'D LIKE TO SET THAT DATE.

12              THE COURT:  ALL RIGHT.  LET'S SET THE HEARING FOR

13    AUGUST THE 22ND.

14         SO YOU WANT TO MOVE YOURS BACK A WEEK, IS THAT RIGHT, TO

15    THE 29TH?

16              MS. YOUNG:  I WOULD APPRECIATE THAT, YOUR HONOR.

17         AND THEN MOVE ALL THE OTHER DATES A WEEK.  THAT WILL STILL

18    BE -- ALL THE PLEADINGS WOULD STILL COME IN BY JULY 20TH, WHICH

19    IS A MONTH BEFORE THE HEARING DATE.

20              THE COURT:  OKAY.  SO JULY -- AND I WANT GOOD BRIEFS.

21    I DON'T WANT WEAK BRIEFS THAT REQUIRE THE COURT AND CHAMBERS TO

22    HAVE TO DO ALL THE WORK.  OKAY?

23              MR. SPRINGSTEEN:  UNDERSTOOD, YOUR HONOR.

24              THE COURT:  SO THEN THE REPLY WILL BE DUE -- LET'S

25    SEE.  SO IF YOU'RE FILING ON THE --
```

```
 1              MS. YOUNG:  29TH.

 2              THE COURT:  -- 29TH, THEN THE RESPONSE IS DUE ON THE

 3       13TH; AND THEN THE REPLY IS DUE ON THE 20TH.

 4          NOW, I'M GOING TO SET A SENTENCING DATE AS WELL.  I THINK

 5       WE SHOULD OPERATE ON BOTH FRONTS.  FOR SENTENCING I'M GOING TO

 6       SELECT, WHAT ABOUT SEPTEMBER 26TH?

 7              MR. SPRINGSTEEN:  THAT'S FINE FOR THE GOVERNMENT,

 8       YOUR HONOR.

 9              MS. YOUNG:  YOUR HONOR, COULD WE DO IT -- THERE'S

10       SOMETHING THAT STICKS IN MY MIND ABOUT THE LAST WEEK IN

11       SEPTEMBER AND I CAN'T PINPOINT WHAT IT IS.

12              THE COURT:  SEPTEMBER 19TH, THEN.  I'M NOT GOING TO

13       PUSH IT BACK FURTHER.

14              MS. YOUNG:  ALL RIGHT, SEPTEMBER 19TH.  IS THAT

15       ENOUGH TIME ACCORDING TO THE PROBATION DEPARTMENT'S CALENDAR?

16              THE CLERK:  YES, COUNSEL.

17              MS. YOUNG:  OKAY.  ALL RIGHT.

18              THE COURT:  I THINK UNDER PROBATION, WE COULD EVEN DO

19       IT SOONER.

20              THE CLERK:  THAT'S CORRECT, YOUR HONOR.

21              THE COURT:  IT'S 90 DAYS FOR OUT OF CUSTODY.

22          OKAY.  AND WHAT ELSE DO WE NEED TO DO TODAY?

23              MS. YOUNG:  NOTHING FURTHER.

24              MR. SPRINGSTEEN:  YOUR HONOR, JUST TO CLARIFY, THE

25       BRIEFING ON THE RULE 29 MOTION FROM THE DEFENSE, THAT REPLACES
```

```
1    THE BRIEFING THAT YOU HAD ASKED FOR EARLIER TODAY?

2              THE COURT:  WELL, DO YOU HAVE ANYTHING READY?

3              MR. SPRINGSTEEN:  NO.  WE WENT BACK TO THE OFFICE AND

4    WERE MORE OR LESS IMMEDIATELY SUMMONED BACK TO COURT.

5              THE COURT:  ALL RIGHT.  THAT'S FINE.  YOU DON'T HAVE

6    TO FILE ANYTHING TODAY.  WE'LL JUST DEAL WITH IT IN POST-TRIAL

7    MOTIONS.

8              MR. SPRINGSTEEN:  THANK YOU, YOUR HONOR.

9              THE COURT:  OKAY.  AND I'M GOING TO ASK -- I DON'T

10   WANT IT TO BE LIKE THE MOTIONS IN LIMINE WHERE THE MOTIONS ARE,

11   LIKE, TWO SENTENCES AND DON'T EVEN GIVE ME ENOUGH INFORMATION

12   TO RULE AND THEN I HAVE TO, YOU KNOW, MOVE FOR SUPPLEMENTAL --

13   REQUEST SUPPLEMENTAL BRIEFING.  THIS NEEDS TO BE THOROUGH AND

14   IT NEEDS TO BE COMPREHENSIVE.

15             MR. SPRINGSTEEN:  UNDERSTOOD, YOUR HONOR.

16             THE COURT:  ALL RIGHT.  WE'RE ADJOURNED.

17             MS. YOUNG:  THANK YOU, YOUR HONOR.

18             MR. SPRINGSTEEN:  THANK YOU, YOUR HONOR.

19        (THE PROCEEDINGS WERE CONCLUDED AT 4:20 P.M.)

20

21

22

23

24

25
```

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED:  JUNE 19, 2018